[Civ. No. 4148. Fourth Dist. Jan. 15, 1951.]

In re MARY DIANNE COUGHLIN et al., Minors. JOHN H. COUGHLIN, Respondent, v. THELMA RUTH COUGHLIN, Appellant.

Joseph W. Pierce, David Lynn and William F. Kistler for Appellant.

Wilson & Wilson for Respondent.

GRIFFIN, J.—Petitioner and respondent John H. Coughlin obtained an order appointing him guardian of two minor children, Mary Dianne, aged 9 years (legally adopted daughter) and Michael John, aged 6 years (for whom adoption proceedings are pending). Cross-petitioner and appellant Thelma Ruth Coughlin was, by order of court, denied her claimed right to such appointment. She appeals from these orders.

The parties were married in 1936. Matrimonial differences arose. About April, 1948, petitioner, who lived with his wife in an apartment over petitioner's place of business, went to a hotel to reside. The children were left with his wife, who brought into the home a 19-year-old girl, named Beverly, who occupied the apartment with the wife and children and assisted in caring for them. Mrs. Coughlin decided she no longer desired to live in the apartment but preferred a home away from her husband's place of business. After conferences with the attorneys for the respective parties Dr. Coughlin, about August 1, 1948, purchased a "temporary separate abode" for his wife and the children in Redlands, and furnished considerable support money for their care. The parties then executed a written agreement in respect to their property,

the care and support of the wife and children, and for a definite arrangement as to the custody of the children and respondent's right of visitation with them. The agreement recites that it is executed with "the express hope that the separation would be only temporary."

Petitioner had custody of the children during August, 1948, under the agreement, and they were never returned to appellant by him. During that month Mrs. Coughlin rented a cottage at Malibu Beach, which she and Beverly occupied. Considerable evidence was produced at the hearing pertaining to the activities of Beverly and Mrs. Coughlin in respect to men associating with them and staying at the cottage at intervals during that month. Petitioner hired investigators to observe the actions of his wife and the activities carried on by her. A recitation of the facts related by the investigators occupies several hundred pages of the reporter's transcript. If we accept their version of her conduct and the deductions allowable, it could be said that her conduct was at least somewhat unbecoming.

There was a culmination of the vacation at the beach when the petitioner, accompanied by three investigators, broke into the unlighted cottage at 3 o'clock one morning and found Mrs. Coughlin seated on the lap of a strange man. A picture of her was taken in that position as well as a picture of the disturbed condition of a near-by couch and covers. Her explanation of this was somewhat fanciful although she claims that the circumstances shown do not reflect any indiscretion on her part because the man involved was a friend of Beverly, and if such acts did show indiscretion, it should not affect the judgment of the court in awarding the custody of the children to Dr. Coughlin because any such acts that might have there taken place were out of the presence of the children and that since she and Dr. Coughlin were separated she was entitled to be relieved of her lonesomeness by having adults in her home.

Petitioner immediately filed a petition for his appointment as guardian of the two children. On September 4, 1948, Mrs. Coughlin filed an action for divorce, alleged extreme cruelty, made some serious charges of misconduct on the part of her husband, and asked for a citation and order to show cause why she should not have the temporary custody of the girl until the trial of the action. On September 25, she filed objections to the petition of Dr. Coughlin and by cross-petition asked that she be appointed guardian of both children.

The citation order in the divorce action and the petition for appointment of guardian were consolidated for hearing. Eight days of trial ensued. After some delay the judge signed an order denying the application of the wife in the divorce action, granted petitioner letters of guardianship for the two children, and denied cross-petitioner's prayer. She appealed from the orders entered in the guardianship proceeding.

Her first claim is that the trial court erred in deciding the case upon the ''old-fashioned'' prejudice of our pioneer Puritan, Quaker, and Catholic fathers and mothers, instead of upon the modern and more equitable principles of law. This contention is based upon the remarks of the trial judge in summarizing the evidence. He announced that possibly modern civilization had a lot of ideas about individual conduct, which may be all right, but that he was probably old-fashioned and still liked to apply some of the ideas promoted by the pioneer Quakers, Puritans, and Catholics, and that all those things should be considered in deciding what is for the best interests of the children involved. The argument of counsel for appellant appears to be more fanciful than real. It might be well argued that now and then the modern generation could, without too much strain, take a leaf out of the books of our pioneer forefathers, and more or less use it as a guide for our present-day thinking and example of living. However, the ultimate question, as pointed out by the court, was the welfare of the children and whether the wife or the husband was more adequately and morally equipped to furnish them with the required care, training, and attention. In addition to the facts related, there was also evidence that the wife, while residing in the Redlands home, was entertaining men at late and unusual hours; that while living in the apartment over the doctor's office, she became acquainted with a Syrian bartender whom she had met while visiting a bar in Los Angeles with Beverly. Mrs. Coughlin's testimony is that this bartender also made ladies' hats; that she had him make several hats for her; that it was necessary to go to Los Angeles on many occasions to have her hats fitted by him at his home at nights, and also that she was learning the business of making hats; that sometimes she remained overnight, leaving the children with Mexican or Negress baby sitters in the Negro or Mexican section of town; that the children were left all night in charge of Beverly on many occasions. She testified that this business relationship with

the hat maker later developed into a social relationship and that the two of them went out to various night clubs to dinner and danced, and that she later became very interested in him "as a man."

There was some evidence that the children, under Mrs. Coughlin's care, did not receive all the attention that might be expected. On the other hand, there was evidence that she was a good mother to them.

It is true, as pointed out by counsel for appellant, that the Legislature has prescribed certain guides under which the courts should act in awarding custody of minor children. (Civ. Code, § 138; Prob. Code, §§ 1406-1408.) In this connection counsel cites several cases in support of his argument, such as *In re Green*, 192 Cal. 714 [221 P. 903]; *Washburn* v. *Washburn*, 49 Cal.App.2d 581 [122 P.2d 96]; and *Juri* v. *Juri*, 69 Cal.App.2d 773 [160 P.2d 73]. ▮ The true rule in this respect is set forth in *Crater* v. *Crater*, 135 Cal. 633, 635 [67 P. 1049]. It is there stated that the controlling force in directing the custody of minor children includes the conduct of the parties, the morals of the parents, their financial condition, the age of the children, and the devotion of either parent to the children's best interests and good, and that the court's legal discretion in. exercising such power, and the conclusion reached by it, will not be disturbed upon appeal unless it clearly appears that its discretion has been abused.

In *Guardianship of Reynolds*, 60 Cal.App.2d 669 [141 P.2d 498], it was held that the guardianship itself is not concluded by the appointment of the guardian; that jurisdiction of the court in this respect is a continuing one; that if circumstances subsequent to an original order appointing a guardian make it desirable and conducive to the comfort and well-being of the children in question, a modification thereof may be made.

▮ Without further discussion of all the evidence bearing on the general subjects here involved, it is sufficient to say that the court was justified, under the evidence, in finding that the general welfare of the two children might be better served under the guardianship of petitioner. No abuse of discretion appears.

▮ It is next contended that certain objectionable questions were asked of Mrs. Coughlin on cross-examination concerning relatives of Dr. Coughlin calling Mrs. Coughlin and telling her that they were "incensed" over her behavior and the manner in which she was caring for the children. She admitted such a conversation. No prejudicial error

appears to have resulted in the ruling of the court in allowing her to answer the questions.

■ Finally, it is argued that the trial court had no power to appoint a guardian when a divorce action was pending involving the custody of the minor daughter. Appellant states that no reported case has been found which allows or disallows such procedure, but argues that the statute forbids it, and cites sections 138 and 214 of the Civil Code. This contention is untenable. Mrs. Coughlin was denied the temporary custody of the daughter under the divorce proceedings then pending. So far as the record is concerned that order became final. There is no conflict between the order here involved and that order in respect to the custody of the two children. It cannot be said that the trial court had no jurisdiction to, or lacked the power to act in the guardianship proceeding. (*Guardianship of Burket*, 58 Cal.App.2d 726 [137 P.2d 475]; *In re Lundberg*, 143 Cal. 402 [77 P. 156]; Code Civ. Proc., § 1747; *Ex Parte Miller*, 109 Cal. 643 [42 P. 428]; 13 Cal.Jur. p. 151, § 12; *Evans* v. *Evans*, 154 Cal. 644 [98 P. 1044]; Prob. Code, § 1408.)

Orders affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied February 14, 1951, and appellant's petition for a hearing by the Supreme Court was denied March 15, 1951. Carter, J., and Schauer, J., voted for a hearing.