[Civ. No. 9020. Third Dist. Mar. 25, 1957.]

FRANK GIDEON REYNOLDS, Respondent, v. MARGUERITE EVELYN REYNOLDS, Appellant.

McAllister & Johnson and Walter C. Frame for Appellant.

Ira B. Langdon, Claude H. Smart, Jr., and Miller, Kroloff, Brown & Belcher for Respondent.

SCHOTTKY, J.—This is an appeal from a judgment in which the plaintiff and cross-defendant, Frank Reynolds, was granted a divorce from the defendant and cross-complainant, Marguerite Reynolds, and was awarded custody and control of the parties' 7-year-old son, Bruce, the real property and automobile, and a part of the household goods and furniture. Marguerite received the sum of $500 as her share of the real property and the automobile, and the right of visitation of the child. Although Marguerite has appealed from the whole of the judgment, she states in her brief that "The sole question involved in this appeal concerns the custody of the minor child of the parties, a boy of seven."

It appears from the record that the parties had been married since 1933. In 1953 the respondent obtained employment in the Sacramento area, and brought his wife and child to West Sacramento to reside. A few months later respondent hired one Woodrow Buratti and he brought him home where he introduced him to appellant and the child. A short time

thereafter respondent went to the hospital with a back injury, and Buratti called upon him frequently at the hospital and later at respondent's home.

In February, 1954, respondent and appellant separated. The respondent moved to Stockton and the appellant took a job in Sacramento. The appellant continued to see Buratti in Sacramento.

In October, 1954, the parties became reconciled, and appellant returned to Stockton. At this time Buratti was in the county jail in Sacramento serving a sentence for petit theft, and the appellant handled Buratti's business affairs for him, drove his car and visited him in the jail.

The reconciliation failed, and the parties separated for the last time in January, 1955. The appellant moved out of the family home and took the child with her. The action for divorce followed.

 Buratti, who was a witness at the trial, admitted arrests and convictions for burglaries, petit theft, vagrancy and disturbing the peace in Yolo County, in Sacramento, Petaluma, San Rafael and Salinas. His record covers a period from 1937 to 1954 and much of this time he spent in prison, including a four-year term in San Quentin.

The record shows that the association of appellant with Buratti began prior to the separation of appellant and respondent and continued up to the date of the trial. This association included regular visits by Buratti at the parties' home while respondent was in the hospital, the exchange of suspicious letters between Buratti and appellant while Buratti was in jail in which Buratti expressed his love for appellant and asked her to marry him and made other rather frank statements which tended to show that appellant and Buratti were on very friendly terms. Buratti made regular visits to appellant's apartment during the separation of the parties. The impact of Buratti upon the appellant's life is described by her in these words: ". . . I hold him in deep respect, as far as what he has been to me, to my son, to Frank when he needed him, to our friends, but as far as any marital condition, no, there is nothing." In answer to the question: "What are your feelings toward Mr. Buratti today?" appellant replied: "The same." On cross-examination of appellant the following occurred: "Q. And at that time, didn't you say in effect to your husband, regarding Buratti, 'there hasn't been near as much sex as you think there has'? A. Definitely." There

is testimony in the transcript indicating that the parties had no serious domestic problems prior to Buratti's appearance on the scene.

There is also evidence in the record from which it could fairly be inferred that there were drinking parties in appellant's apartment.

Appellant first attacks the finding of the trial court that she was not a fit and proper person to have the custody of said minor child. She argues that there was no evidence to support this finding and also argues that because of a statement made by respondent's counsel at the trial respondent cannot now claim that appellant is not a fit and proper person to have the custody of the child. Appellant quotes the following from the record:

"MR. LANGDON [counsel for respondent] : Well, we will submit she acts as a mother toward Bruce. Our only objection to her on Bruce is the fact that the man she keeps company with, that is our only objection. I don't think we need take the Court's time trying to prove she has been a good mother.

"MR. CLARK : If you will stipulate.

"MR. LANGDON : I am not stipulating, we are raising no issue on it."

We do not regard the foregoing statements of counsel for respondent as precluding respondent from contending that appellant was not a fit and proper person to have the custody of the child, but in any event that issue was one for the determination of the court, and the court would not be bound by any statement or stipulation of counsel.

Appellant's principal contention is that there is no substantial evidence to support the court's finding that she was not a fit and proper person to have the custody of the minor child, and that under section 138, subdivision 2, of the Civil Code she was entitled to have the custody of the child awarded to her. Said section reads as follows:

"As between parents adversely claiming custody, neither parent is entitled to it as of right; but other things being equal, if the child is of tender years, custody should be given .to the mother; if the child is of an age to require education and preparation for labor or business, then custody should be given to the father."

■ With reference to this section this court said in *Phillips* v. *Phillips*, 48 Cal.App.2d 404, at page 407 [119 P.2d 736]:

"This section does not give the mother the *absolute right*

to the custody of a child of tender years. The qualifying clause, 'but other things being equal,' still leaves a large measure of discretion with the trial court. If the court finds that other things are *not* equal, as it evidently did here, and there is any substantial evidence to support such a finding, our inquiry is at an end.''

And as stated in *Munson* v. *Munson,* 27 Cal.2d 659, at page 666 [166 P.2d 268]:

''Plaintiff relies on the proposition that, as between parents adversely claiming custody, 'other things being equal, if the child is of tender years, it should be given to the mother.' (Civ. Code, § 138, which refers to actions for divorce; the proposition is equally applicable here.) The evidence above recited is clearly sufficient to support the determination of the trial court that 'other things' are not equal in this case. 'In determining whether other things are equal within the meaning of the above code section, the trial court is necessarily allowed a wide latitude in the exercise of its discretion. In the first instance it is for the trial court to determine, after considering all the evidence, how the best interests of the child will be subserved. The question is to be determined solely from the standpoint of the child, and the feelings and desires of the contesting parties are not to be considered, except in so far as they affect the best interests of the child.' (*Taber* v. *Taber* (1930), 209 Cal. 755, 756 [290 P. 36].)''

We are unable to agree with the contention of appellant that the court abused its discretion in awarding the custody of the minor child to respondent, nor can we agree with her contention that ''appellant's association with a man with a criminal record is not ground for denying her the custody of a young child.'' As we read the record the court could well find that because of appellant's close friendship and association with Woodrow Buratti, which would bring Buratti into close association with the child, it would not be for the best interests of the child that he be awarded to appellant. And while it is no doubt true that appellant had and has a deep affection for the child and would care well for the physical wants of the child, we believe that her evident attachment for and her close association with Buratti, as abundantly shown by the record, give ample support for the court's finding that she was not a fit and proper person to have the custody of said minor child. Fitness to have the custody of a minor child requires more than affection and the ability to properly feed, clothe and house the child. It also

requires an environment which will not be detrimental to the character and morals of the child. In view of the record of Buratti and the statement of appellant at the trial that her feelings toward Buratti were the same as they had always been, we think the court was fully justified in concluding that appellant would not provide such an environment.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 22, 1957.