[Civ. No. 17141.   First Dist., Div. Two.   Apr. 15, 1957.]

LESLIE E. TAYLOR, Respondent, v. BETTY LEE TAYLOR, Appellant.

Newman, Marsh & Furtado for Appellant.

Anderson & Peck and Edward F. Peck for Respondent.

DOOLING, J.—The plaintiff husband in this case was granted an interlocutory decree of divorce on the ground of adultery. Cross-complainant wife had prayed for a divorce on the ground of extreme cruelty which was denied to her in the interlocutory decree. The custody of the six minor children was given to the plaintiff.

Appellant attacks the interlocutory decree in two particulars: 1. She argues that the finding of the trial court that she is an unfit person to have the custody of the children is not supported by the evidence; 2. She argues that the trial court abused its discretion in not granting her a decree of divorce on the ground of extreme cruelty.

The respondent is in the United States Navy and has spent most of the recent years in overseas duty. In December, 1953 the appellant moved to a house in Newark which was rented by her and one Hubert Howeth, representing themselves as husband and wife. She continued these relations with Howeth and in January, 1955 gave birth to a child whose father is Howeth. Appellant and Howeth continued their adulterous relationship, representing themselves as Mr. and Mrs. Howeth, and in September, 1955 they were arrested on suspicion of adultery. The children lived with their mother all during the period of these adulterous relations and were taught to call Howeth "Daddy Hubert." Howeth is a married man but hopes to get a divorce and expects to marry the appellant when both are free to marry. After the arrest of appellant and Howeth the children were taken to live in the juvenile detention home. While they were there some of the children engaged in discussions as to whether Taylor or Howeth was their father. The oldest child was 10 years of age at the time of the trial in October, 1955. The appellant during all of the period that she lived with Howeth as his wife was receiving a regular allotment for the support of herself and the children from her husband's salary. Appellant continued her association with Howeth while the children were in the detention home, Howeth driving her down to see them there.

Respondent testified that if awarded the custody of the children they would be physically cared for by his mother and a

married sister living in Illinois so long as he remains overseas.

Appellant relies heavily on *Ashwell* v. *Ashwell*, 135 Cal. App.2d 211 [286 P.2d 983], as holding that adulterous relations by the mother standing alone do not warrant a finding of unfitness. The case is an extreme one and does not stand for the rule so broadly expressed. In the Ashwell case the court was careful to point out: 1. that the custody of the children had originally been awarded to the mother; 2. that the children were of such a tender age that they could not be adversely affected by the adulterous relation (the oldest child in that case was only 6); 3. that the mother was compelled by economic necessity to live with her adulterous consort; and 4. that she did not go to live with her paramour until after the entry of her interlocutory decree of divorce and planned to marry him as soon as her divorce became final. In the case before us the court was considering the original award of custody, not the change of a custody award already made. The oldest child in our case was 10 and some of the children had been so far affected by the irregular home environment as to engage in discussions as to which one of the two men was their father. The court said in the Ashwell case, where the oldest child was 6 (135 Cal.App.2d 218): "If she does not marry, and continues in her relations with Cassella, then, obviously, the time is fast approaching when that condition will endanger the welfare of the children . . ." That time is already well past as to the older children in the pending case. The mother in our case went to live openly with Howeth as his wife before any divorce proceedings had been initiated and continued this relation for almost two years while she was receiving regular allotments from her husband's salary. She cannot be said to have been acting under force of economic necessity. While the parties say that they plan to be married the marriage depends upon the uncertainty of Howeth securing a divorce from his present wife and the record does not disclose that divorce proceedings between them are even pending.

Unless we are to say that no judge could reasonably find that a mother who has taken her children into an adulterous home and kept them there for almost two years has thereby shown her unfitness to have their custody we must affirm the award of custody made in this case. It is our conclusion that the finding of unfitness finds adequate support in the record.

We may concede that the wife produced sufficient evidence of cruelty to justify the granting of a divorce to her. This does not mean that the court when granting a divorce to the husband for the wife's adultery must likewise grant the wife a divorce. The judge, when both parties to the marriage show grounds for divorce, may in his sound discretion grant the divorce solely to the party whom he finds less at fault on the weight of the whole evidence. (*Gilmore* v. *Gilmore,* 45 Cal.2d 142, 148 [287 P.2d 769].)

Decree affirmed.

Kaufman, P. J., and Draper, J., concurred.