[Civ. No. 6120.   Fourth Dist.   Aug. 28, 1959.]

RICHMOND K. KELLY, JR., Respondent, v. STAUNTON W. KELLY, Appellant.

Ernest F. Shelander for Appellant.

Ralph Waverly Wallace and William McChesney Wallace for Respondent.

MUSSELL, J.—This is an appeal from an interlocutory decree of divorce in which plaintiff was granted a divorce from the defendant on the grounds of extreme cruelty and adultery. The complaint was filed November 8, 1957, and one Bennie Guthrie was named as corespondent. At pretrial the defendant wife withdrew her answer and cross-complaint and the cause proceeded to trial on the issues of custody of the minor child of the parties (Richmond K. Kelly III, born January 10, 1956) and interests in community property. The latter issue was resolved by agreement at the trial, leaving only the contested issue of custody of said minor child.

The trial court found that plaintiff is a fit and proper person to have the care, custody and control of said child and that defendant is not a fit and proper person to have said custody. The care, custody and control of said child was awarded to plaintiff and defendant was allowed the right of reasonable visitation. Defendant appeals from the judgment and attempts to appeal from the order denying a motion for new trial. Since such an order is not appealable, the attempted appeal therefrom is dismissed and only the appeal from the judgment need be considered. (*Pipoly* v. *Benson,* 20 Cal.2d 366, 368 [125 P.2d 482, 127 A.L.R. 515].)

Plaintiff and defendant were married June 19, 1954, and separated on or about October 6, 1957. Plaintiff, a graduate of the United States Naval Academy at Annapolis, is a Naval officer on active duty and was, at the time of trial, assigned

to the Naval Academy as an instructor, with an estimated two-year tour of duty there.

In June, 1957, the parties were residing in Westminster, California, and during that month plaintiff left for duty in the Far East, returning to the United States on October 4, 1957. Some time in September, 1957, defendant began an adulterous relationship with one Bennie Guthrie, whom she met at a filling station where she traded. On or about October 20, 1957, defendant took the child and with Guthrie and another couple drove to Texas and returned to California about 23 days later. Before she left on this trip defendant sent plaintiff the following telegram: "Took off. Won't be home next week end. Will call back. Think. Staunton." Plaintiff immediately went to defendant's home in Anaheim. No one was there, the house was "all in shambles," and an unknown car was in the garage. When defendant returned from Texas, plaintiff arranged to see the boy and upon arriving at defendant's residence at Anaheim, found the child at a neighbor's house. He was asleep and in a dirty condition.

Shortly after returning from her Texas trip, defendant moved to a house in Stanton, Orange County. She used the name of Mrs. Bennie Guthrie in renting the house and listing the telephone. She and Guthrie held themselves out as being married and, while she denied that Guthrie "lived" in the house, she admitted that he kept his clothes there and that he had slept there several times. Guthrie, however, stated in his deposition that he spent the majority of the nights with defendant and that he had actually spent only about 10 nights in the preceding three months in his nominal home, and that he had had sexual intercourse with defendant many times in California and Texas.

Defendant admitted that her adultery continued until some time in the beginning of March, about four months after the complaint herein was filed. She testified she was supporting Guthrie "in some ways"; that she had a joint bank account with him; that she and Guthrie went through a marriage ceremony in Nogales, Mexico, in January, 1958; that on July 5, 1958, she gave birth to a baby girl and that Guthrie was the father of this child; that at the time of trial Guthrie was in jail in Orange County on a "child beating" charge; that Guthrie had a "drinking problem" but that at the time he was sent to jail he was no longer drinking; that she was in love with Guthrie when she first committed adultery with

him and that they had discussed marriage but that "there are a lot of things Bennie and I have to iron out before we can get married."

Guthrie stated in his deposition that on one occasion when he spent the night with defendant in a motel the child slept in an adjoining room and on another occasion she left the child with a neighbor while he and defendant stayed in a motel; that on another occasion defendant left the boy with a baby sitter while she went to Phoenix to be with Guthrie; that he had had sexual intercourse with defendant in Phoenix; that defendant admitted to him that she had committed adultery with a plumber who lived next door to plaintiff and defendant.

Defendant at the trial testified that she was sorry for the relationship with Guthrie and was ashamed of it; that she was now furnishing a four bedroom home and maintained it in a clean and sanitary manner; that she kept the boy clean, well clothed and fed on healthy food and furnished him with proper medical and dental care. This testimony was corroborated by witnesses whom she produced.

The trial court in its remarks at the close of the trial stated that there had been no showing that defendant was anything but a good mother as far as her physical treatment of the child was concerned and that she took good physical care of him. The court then said:

"The Court is faced with what is for the best interests of this young child, considering the physical well being of the child, together with his moral well being.

"Now, from the moral standpoint, by her actions within the last several years, the defendant has proven herself to be morally unfit to have the custody of this child. In addition to that moral unfitness, which appears to the court to be still present, the defendant manifests a certain instability emotionally, I take it."

The court then found that "The plaintiff is a fit and proper person to have the care, custody and control of Richmond K. Kelly, III, the minor child of the parties; the defendant is not a fit person to have the care, custody or control of said minor child."

Appellant contends that the trial court abused its discretion in awarding the child of the parties to the father. This contention is not supported by the record.

Section 138, subdivision 2, of the Civil Code provides: "As between parents adversely claiming the custody, neither parent is entitled to it as of right; but other things being

equal, if the child is of tender years, custody should be given to the mother; if the child is of an age to require education and preparation for labor or business, then custody should be given to the father.''

In *Munson* v. *Munson*, 27 Cal.2d 659, 666 [166 P.2d 268], the court, in discussing this section of the Civil Code, said:

'' 'In determining whether other things are equal within the meaning of the above code section, the trial court is necessarily allowed a wide latitude in the exercise of its discretion. In the first instance it is for the trial court to determine, after considering all the evidence, how the best interests of the child will be subserved. The question is to be determined solely from the standpoint of the child, and the feelings and desires of the contesting parties are not to be considered, except in so far as they affect the best interests of the child.''

In *Currin* v. *Currin*, 125 Cal.App.2d 644 [271 P.2d 61], the husband was an officer in the United States Marine Corps and the child involved was about two years old. The wife's conduct was quite similar to that of the wife in the present case. She was charged with adultery with a named corespondent and, as here, apparently took good physical care of the child. Custody was awarded to the husband, with permission for the child to reside with the husband's brother and his wife in North Carolina. The wife contended that the evidence was insufficient to support the finding of unfitness because there was nothing to show how or in what manner her conduct with the corespondent was brought to the attention of or affected the child. In the instant case the wife asserts that at the time of trial her relationship with Guthrie had ceased; that many months had elapsed since she had had sexual intercourse with him and that there was no evidence that her relationship with him in any way affected the child. ''It was much too young.'' In determining that the trial court did not abuse its discretion in awarding the custody to the husband in the Currin case, the court said (pp. 650, 651):

''The problem presented to the trial court called for a determination of whether the proven conduct of plaintiff, consisting as it did of indiscriminate, profligate and shameless association with the corespondent, even after commencement of the divorce action, was such as to endanger the child's welfare, were the latter to be placed in the mother's custody.

''. . . . . . .

''We are not here confronted with a situation of one im-

moral act but with a continuous course of unmoral, if not immoral conduct. ▮ To be entrusted with the rearing of children a mother should be possessed of such character and conduct that by the force of her example she can train them in the paths of morality, righteousness and rectitude.

▮ ''Furthermore, we are here confronted with a question of the discretion vested in the trial court. At the trial both parties appeared as witnesses and were examined and cross-examined at some length. In decisions too numerous to mention, it has been said that the trial judge having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony. And this is especially true where the custody of minor children is involved. An appellate tribunal is not authorized to retry the issue of custody, nor to substitute its judgment for that of the duly constituted arbiter of the facts. Only upon a clear and convincing showing of abuse of discretion will the order of the trial court in such matters be disturbed on appeal. We find no such showing here.''

In *Reynolds* v. *Reynolds*, 149 Cal.App.2d 409, 413-414 [308 P.2d 921], the custody of the 7-year-old boy was awarded to the father. The wife associated with a man who had admitted arrests and convictions for burglaries, petty theft, vagrancy and disturbing the peace. The court there said:

''We are unable to agree with the contention of appellant that the court abused its discretion in awarding the custody of the minor child to respondent, nor can we agree with her contention that 'appellant's association with a man with a criminal record is not ground for denying her the custody of a young child.' As we read the record the court could well find that because of appellant's close friendship and association with Woodrow Buratti, which would bring Buratti into close association with the child, it would not be for the best interests of the child that he be awarded to appellant. And while it is no doubt true that appellant had and has a deep affection for the child and would care well for the physical wants of the child, we believe that her evident attachment for and her close association with Buratti, as abundantly shown by the record, give ample support for the court's finding that she was not a fit and proper person to have the custody of said minor child. ▮ Fitness to have the custody of a minor child requires more than affection and the ability to properly feed, clothe and house the child. It

also requires an environment which will not be detrimental to the character and morals of the child. In view of the record of Buratti and the statement of appellant at the trial that her feelings toward Buratti were the same as they had always been, we think the court was fully justified in concluding that appellant would not provide such an environment.''

In *Combs* v. *Combs*, 162 Cal.App.2d 33 [327 P.2d 164], the custody of a 5-year-old boy was awarded to his father. The trial court found that it was for the best interests of the minor child that the respondent (father) have the custody of the minor child; that the defendant was an unfit person to have the custody of the child in that she was extremely nervous and for some time had been treated for said nervousness and that she had mistreated the child. These findings were upheld on appeal.

Appellant relies heavily on the case of *Ashwell* v. *Ashwell*, 135 Cal.App.2d 211 [286 P.2d 983]. However, in that case there was no express finding that the mother was not a fit and proper person to have the custody nor that she was not properly caring for her children nor that she maintained them in an improper home. Original custody of the children was given to the mother and changed during the interlocutory period to the father. It was held on appeal that there was insufficient evidence of a change of circumstances during the interlocutory period to justify the transfer of custody. Furthermore, the evidence showed that the father had expressed his intention to remove the children to the distant state of Virginia for rearing by their grandmother, whom they had never seen.

In the instant case the trial court stated that he was faced with what was for the best interests of the child involved, considering its physical well being, together with its moral well being, and that the defendant had from a moral standpoint, by her actions within the past several years, proven herself to be morally unfit to have the child. This conclusion is supported by the record. The evidence shows that this is not the case of a single or occasional indiscretion, but is one of continuing conduct, the defendant having lived with Guthrie in adultery even after the complaint herein was filed and with a man who had been convicted of child beating and was incarcerated in jail therefor. He admittedly drank ''quite a lot,'' got drunk and, apparently, had domestic difficulties with his wife, resulting in a divorce. While defendant claims that she is ashamed of her conduct and the record

supports the conclusion that she did take proper physical care of the child, fitness to have his custody also requires an environment which will not be detrimental to the child's character and morals. A review of the entire record herein compels us to conclude that the trial court did not abuse its discretion in awarding the custody of the child involved to the plaintiff.

Judgment affirmed. Attempted appeal from the order denying motion for new trial dismissed.

Griffin, P. J., and Shepard, J., concurred.