[Civ. No. 6778. Fourth Dist. Sept. 7, 1962.]

FRANK E. MATHEWSON, Plaintiff and Respondent, v.
JEAN L. MATHEWSON, Defendant and Appellant.

Charles T. Bumer, Jr., for Defendant and Appellant.

George Ritner for Plaintiff and Respondent.

534

COUGHLIN, J.—The sole issue on this appeal is whether the evidence is sufficient to sustain an order modifying child custody provisions of an interlocutory divorce action. The plaintiff and the defendant were husband and wife; were parties to a divorce action tried on February 1, 1961; and obtained an interlocutory decree therein declaring that each of them was entitled to a divorce and awarding custody of their fifteen month old son to the defendant, his mother.

At the time of the foregoing trial the defendant-wife was pregnant by a man other than her husband, the pregnancy occurring after separation from the latter, but she concealed this fact from her attorney, from her husband, and from the court. Following entry of the interlocutory decree she and her son lived in a one-bedroom apartment. The father of her illegitimate child moved in and lived with them. He was referred to as ''Daddy'' when the defendant spoke of him to her son.

Upon learning of his wife's pregnancy, the plaintiff moved the court to modify the custody provisions of the interlocutory decree and place the boy with him.

Subsequently, upon advice of counsel, the father of the illegitimate child moved out of the apartment.

At the hearing of the motion for modification, the plaintiff contended that his wife had not kept the child clean; complained that at times he had not been permitted to exercise his visitation rights; testified that on the occasions when he took the boy with him, the latter was happy to leave his mother and unhappy to return to her, going into a fit of crying when brought back; testified further concerning his lack of knowledge of his wife's pregnancy until shortly before he commenced the instant proceeding; and introduced evidence which supports a conclusion that the child would be well cared for in his home, which he keeps with his mother and father. The defendant contended that her son was well cared for by her; denied the charges of uncleanliness; admitted her indiscretion with the father of her illegitimate child; said that in not disclosing her pregnancy at the trial of the divorce action she supposed she was deceiving the court, but did not tell anyone because she ''was worried about losing Bobby over it''; claimed that she and the father of her illegitimate child intended to marry upon entry of a final decree; testified that he lived with her for a time after entry of the interlocutory decree, that he supported her, and that as far as her feelings were concerned, he would then

be living with her if her attorney had not advised the contrary; and introduced evidence corroborating her claim that the boy was given proper and loving care. The father of the illegitimate child testified that he and the defendant went to Mexico in April of 1961 and "got a Mexican marriage."

The trial court modified the interlocutory decree; awarded custody of the child to his father; and entered an order accordingly in which it was expressly found that the father "is a fit person to have the custody of the minor child of the parties, . . . and that it is to the best interests and welfare of the child that he be in the custody of" his father. The mother appeals from this order, contending that the evidence does not support the same; that it is contrary to the provisions of the code which require that "other things being equal, if the child is of tender years, custody should be given to the mother" (Civ. Code, § 138, subd. (2)); that her alleged immoral conduct was not harmful to the child and is not a legal ground for taking custody from her; that, as disclosed in an oral opinion delivered at the close of the hearing, the trial judge did not base his decision upon this ground, but made the change in custody because of the financial aspects of the case; that the latter circumstance is not a legal reason for making a custodial placement; and that the order changing custody constituted an abuse of discretion.

■■■ "The universal practice in this state is not to require findings on an order after motion." (*Waymire* v. *California Trona Co.*, 176 Cal. 395, 399-600 [168 P. 563]; *Parker* v. *Parker,* 107 Cal.App.2d 215, 217 [236 P.2d 828].)

On the other hand, implicit in every such order is a finding of all those facts supported by the evidence which are necessary to sustain it. (*Griffith Co.* v. *San Diego College for Women,* 45 Cal.2d 501, 507 [289 P.2d 476, 47 A.L.R.2d 1349]; *Estate of Machado,* 186 Cal. 246, 251 [199 P. 505]; *People* v. *Tannehill,* 193 Cal.App.2d 701, 706 [14 Cal.Rptr. 615].)

■ In the case at bar the trial court, as a part of its order, expressly found that it was for the best interests of the minor that he be placed in the custody of his father and, " 'in the absence of indications to the contrary, a general finding includes a finding of all the special facts necessary to sustain it.' " (*Albonico* v. *Madera Irr. Dist.,* 53 Cal.2d 735, 741 [3 Cal.Rptr. 343, 350 P.2d 95]; *Richter* v. *Walker,* 36 Cal.2d 634, 640 [226 P.2d 593].) ■■■ The oral opinion of a trial judge may not be substituted for findings of fact by the court. (*Martin School of Aviation, Inc.* v. *Bank of*

*America,* 48 Cal.2d 689, 695 [312 P.2d 251] ; *People* v. *Hills,* 30 Cal.2d 694, 702 [185 P.2d 11].) However, such an opinion may be used to determine the process by which the trial judge reached his decision (*Union Sugar Co.* v. *Hollister Estate Co.,* 3 Cal.2d 740, 750 [47 P.2d 273] ; *Winegar* v. *Gray,* 204 Cal.App.2d 303, 312 [22 Cal.Rptr. 301] ; *1st Olympic Corp.* v. *Hawryluk,* 185 Cal.App.2d 832, 838 [8 Cal.Rptr. 728]), and if it appears therefrom that his decision was based on an erroneous concept of the law the error will be corrected on appeal.

At the conclusion of the hearing in the instant proceeding the trial judge expressed his opinion respecting the evidence adduced, and its applicability to the issue at hand. The defendant has selected parts of this opinion and used them to support her contention that the court based its conclusion solely on the financial problems which would be presented by a placement with the mother. When considered as a whole it is apparent that the court's determination was not made on such a basis. To the contrary, it appears that the judge was governed by applicable rules and considered the total evidence in reaching a decision.

The defendant claims that the order in question is not supported by the evidence and is against law because her son is of tender years and "other things being equal," by mandate of Civil Code section 138, subdivision (2), custody should have been awarded to her.

■ "This section does not give the mother the *absolute right* to the custody of a child of tender years. The qualifying clause, 'but other things being equal,' still leaves a large measure of discretion with the trial court. If the court finds that other things are *not* equal, as it evidently did here, and there is any substantial evidence to support such a finding, our inquiry is at an end." (*Phillips* v. *Phillips,* 48 Cal.App. 2d 404, 407 [119 P.2d 736] ; *Reynolds* v. *Reynolds,* 149 Cal. App.2d 409, 412 [308 P.2d 921] ; *Hamilton* v. *Hamilton,* 104 Cal.App.2d 111, 117 [231 P.2d 69].)

■ "In determining whether other things are equal within the meaning of the above code section, the trial court is necessarily allowed a wide latitude in the exercise of its discretion. In the first instance it is for the trial court to determine, after considering all the evidence, how the best interests of the child will be subserved. The question is to be determined solely from the standpoint of the child, and the feelings and desires of the contesting parties are not to be considered,

except in so far as they affect the best interests of the child.'' (*Taber* v. *Taber*, 209 Cal. 755, 756-757 [290 P. 36] ; *Munson* v. *Munson*, 27 Cal.2d 659, 666 [166 P.2d 268].)

 In deciding this issue, the court should take into consideration, among other things, ''the financial condition of the parents, their interests, their morals, and their dispositions.'' (*Foster* v. *Foster*, 8 Cal.2d 719, 732 [68 P.2d 719].)

In his oral opinion the trial judge expressly referred to the provisions of the code which declare that ''other things being equal'' the custody of a child of tender years should be awarded to the mother; assumed that the trial court which granted the interlocutory decree, and awarded custody of the minor to the mother, followed the dictates of this code section; expressed his belief that if the judge of that court had known that the defendant was pregnant as a result of adulterous conduct he would not have placed the child in her custody ''because other things weren't equal''; directed attention to the fact that there was no evidence that the plaintiff had committed any ''matrimonial offenses''; referred to the father as ''less an offender than the mother''; noted that the defendant had encouraged her son to call her prospective husband ''Daddy'' and that although the latter might treat the boy well, nevertheless he would be a stepfather; and, in addition, stated that: ''This case turns . . . on finances a great deal. Practically every one of these cases does''; indicated the probability of continual controversy because the payments made by the father to the mother for the support of their son would become part of a common fund for the support of the whole family; also indicated that such a situation presented a possibility that the plaintiff would be supporting his wife and the father of her illegitimate child; and undoubtedly concluded that the prognosis for an environment which would be for the best interests of the child was poor. In commenting upon the question of finances, the trial judge might well have had in mind the concern expressed by the court in *Crater* v. *Crater*, 135 Cal. 633, 635 [67 P. 1049], where an order awarding custody to a father was sustained and it was said: ''It is evident that the money paid for the support of the child by defendant [the father] should be used for its support, and not for the support of a new family acquired by plaintiff since her divorce from defendant.''

 The court in a custody proceeding should not make a placement order for the purpose of punishing or disciplining an errant parent, (*Stack* v. *Stack*, 189 Cal.App.2d 357, 371

[11 Cal.Rptr. 177]; *Washburn* v. *Washburn*, 49 Cal.App.2d 581, 588 [122 P.2d 96].) The trial judge in the case at bar made it crystal clear that his determination was not prompted by such a desire. In doing so, he expressly refrained from condemning the defendant and indicated a charitable concern for her plight. His remarks in this regard have been misinterpreted by her as proof that he did not believe that her misconduct was an important factor in the case, and that he disregarded the effect thereof upon her ability to provide a suitable environment for her son. To the contrary, a fair consideration of all of the statements made by the judge dictates the conclusion that the defendant's deceitful and immoral conduct was the paramount and primary factor upon which he based his decision.

The order made is adequately supported and the observations of the trial judge are amplified by the evidence, which shows that the mother was an adulteress (Civ. Code, § 93); that she became pregnant by her paramour within a month after meeting him and before the trial of her divorce action; that she concealed the fact of her pregnancy from the judge presiding at that trial because she knew her conduct was wrong and that knowledge thereof by the court might result in the placement of her son with his father; that, nevertheless, immediately upon obtaining an interlocutory decree of divorce she commenced to live with the father of her expected illegitimate child and testified, in substance, that she would have continued to live with him except for the advice of her attorney to the contrary; that her actions were tantamount to the commission of the offense of adultery as defined by Penal Code section 269a; that in the meantime she had married the man with whom she had been living and, although the marriage took place in Mexico, when judged by the laws of California, her actions constituted the offense of bigamy. (Pen. Code, § 281.)

It has been said that ''in nearly every case, one of the things considered in deciding what is for the welfare of the child is the personal behavior and characteristics of the parent.'' (*Stack* v. *Stack, supra,* 189 Cal.App.2d 357, 371.)

''Fitness to have the custody of a minor child requires more than affection and the ability to properly feed, clothe and house the child. It also requires an environment which will not be detrimental to the character and morals of the child.'' (*Reynolds* v. *Reynolds, supra,* 149 Cal.App.2d 409, 413-414.)

''To be entrusted with the rearing of children a

mother should be possessed of such character and conduct that by the force of her example she can train them in the paths of morality, righteousness and rectitude.'' (*Currin* v. *Currin*, 125 Cal.App.2d 644, 650 [271 P.2d 61]; in accord: *Kelly* v. *Kelly*, 173 Cal.App.2d 469, 474 [343 P.2d 391].)

▉ The fact that the minor, because of his age, did not appreciate the impropriety of his mother's conduct is not a determinative circumstance. (*Currin* v. *Currin, supra,* 125 Cal.App.2d 644, 650; *In re Coughlin*, 101 Cal.App.2d 727, 731 [226 P.2d 46].) ▉ Under principles oft-expressed and applied, the conduct of the defendant fully justified the order of the court awarding custody of the minor son to the plaintiff. (*Foster* v. *Foster, supra,* 8 Cal.2d 719, 732; *Santens* v. *Santens,* 180 Cal.App.2d 809, 819 [4 Cal.Rptr. 635]; *Kelly* v. *Kelly, supra,* 173 Cal.App.2d 469, 474; *Taylor* v. *Taylor,* 150 Cal.App.2d 104 [309 P.2d 508]; *Reynolds* v. *Reynolds, supra,* 149 Cal.App.2d 409, 413; *Rude* v. *Rude,* 148 Cal.App.2d 793, 799 [307 P.2d 679]; *Saltonstall* v. *Saltonstall,* 148 Cal.App.2d 109, 115 [306 P.2d 492]; *Stewart* v. *Stewart,* 130 Cal.App.2d 186, 194 [278 P.2d 441]; *Guardianship of Coughlin,* 129 Cal. App.2d 290, 293 [276 P.2d 841]; *Currin* v. *Currin, supra,* 125 Cal.App.2d 644, 650; *Stagliano* v. *Stagliano,* 125 Cal.App.2d 343, 349 [270 P.2d 91]; *In re Coughlin, supra,* 101 Cal.App. 2d 727, 731; *Ludlow* v. *Ludlow,* 89 Cal.App.2d 610, 612 [201 P.2d 579].)

▉ ''An application for a modification of an award of custody is addressed to the sound legal discretion of the trial court, and its discretion will not be disturbed on appeal unless the record presents a clear case of an abuse of that discretion.'' (*Foster* v. *Foster, supra,* 8 Cal.2d 719, 730; In accord: *Munson* v. *Munson, supra,* 27 Cal.2d 659, 666.)

No abuse of discretion appears from the record before us.

The defendant cites and relies upon the decision in *Ashwell* v. *Ashwell,* 135 Cal.App.2d 211 [286 P.2d 983]; in many particulars the facts in the instant case differ materially from those in the cited case; the latter involves an extreme situation (see *Taylor* v. *Taylor, supra,* 150 Cal.App.2d 104, 106); and, in any event, we do not consider the decision therein controlling.

The order is affirmed.

Griffin, P. J., and Shepard, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 31, 1962.