[No. E027176. Fourth Dist., Div. Two. Jan. 29, 2001.]

In re the Marriage of TIMOTHY E. SLAYTON, SR., and PEGGY SUE BIGGUMS-SLAYTON.
TIMOTHY E. SLAYTON, SR., Respondent, v.
PEGGY SUE BIGGUMS-SLAYTON, Appellant.

654

COUNSEL

Amschel Law Corporation and Peter Amschel for Appellant.

Timothy E. Slayton, Sr., in pro. per., for Respondent.

OPINION

**RICHLI, J.**—Peggy Sue Biggums-Slayton (Mother) appeals from an order granting custody of her minor son to her former husband, Timothy E. Slayton, Sr. (Father). We affirm the order.

## I

### FACTUAL AND PROCEDURAL BACKGROUND

The parties were married in 1980. Their first child, Timothy, Jr., was born in 1981. The child whose custody is at issue, Turhan, was born in January 1995.

In May 1997, Father left the marital residence, and in June 1998 he petitioned for dissolution. The court ordered the marriage dissolved in May 1999. Turhan continued to reside with Mother, with visitation granted to Father.

On December 13, 1999, apparently while serving an eviction notice, the police found Turhan, who was then four years old, alone at Mother's residence. Turhan was taken to child protective services and subsequently released to Father. On December 14, 1999, Father applied for and was awarded temporary custody of Turhan in an ex parte proceeding. Mother's petition to regain custody was denied after a full hearing on March 27, 2000.

## II

### DISCUSSION

#### A. *Standard of Review*

■ "The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test. [Citation.] The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [51 Cal.Rptr.2d 444, 913 P.2d 473].)

#### B. *Propriety of Ex Parte Change in Custody*

■ Mother first contends the ex parte order of December 14, 1999, awarding temporary custody to Father did not comply with Family Code section 3064 (section 3064) because it was not supported by sufficient evidence to justify emergency removal of Turhan from her custody. Section 3064 authorizes a court to make an ex parte order granting or modifying custody where "there has been a showing of immediate harm to the child or immediate risk that the child will be removed from the State of California."

There appear to be no decisions construing the "immediate harm to the child" provision of section 3064. However, the Legislature has clearly

indicated that it considers the failure to provide adequate supervision of a child to be a serious and urgent matter. Penal Code section 11166, subdivision (a) requires certain categories of persons to report "child abuse or neglect" and requires that the report be made "immediately or as soon as is practicably possible by telephone . . . ." "General neglect" of a child, as defined in Penal Code section 11165.2, subdivision (b) includes "the negligent failure of a person having the care or custody of a child to provide adequate food, clothing, shelter, medical care, *or supervision* where no physical injury to the child has occurred." (Italics added.) The fact the Legislature has elected to require the immediate reporting of a failure to provide adequate supervision supports the conclusion that such a failure should qualify as "immediate harm" for purposes of section 3064.

In support of his ex parte application for custody, Father submitted a declaration setting forth these facts: On December 13, 1999, Father received a telephone call from Mother, who said Turhan was missing. Father went to Mother's residence and saw the police arresting Mother for leaving Turhan unattended. Mother said she had asked a neighbor to watch Turhan, but the neighbor denied this when Father questioned her. The police directed Father to child protective services, where Turhan was released to him and he was told to apply for an ex parte order granting him custody.

Thus, the court on December 14, 1999, had before it facts showing Mother had failed to provide adequate supervision for Turhan, Mother had been arrested for that conduct, and Turhan had been in the custody of child protective services until he was released to Father. We cannot say the trial court could not reasonably have concluded "that the order in question," temporarily granting custody to Father, "advanced the 'best interest' of the child." (*In re Marriage of Burgess, supra,* 13 Cal.4th 25, 32.)

Moreover, even if Mother were correct that the facts were not sufficient to support an ex parte change of custody under section 3064, Mother had adequate opportunity to litigate the custody issue when the court held a full hearing on March 27, 2000. At that hearing, Mother testified concerning the December 13, 1999, incident as follows: She and Turhan were both ill. Turhan fell asleep, and Mother decided to go out to get some medication for herself. She tried to arrange for a neighbor to watch Turhan but got no response when she knocked on the neighbor's door. She decided to try to go to the store, although she had no car. When she came back, Turhan was missing. She called the police and was told Turhan had been taken to child protective services. She decided it would be better to allow Father to take custody of Turhan than to leave him with child protective services.

Mother further testified that she had pled no contest to child endangerment. She denied having left Turhan alone on any occasion other than December 13.

The court at the March 27 hearing also heard testimony of David Whitfield, who had been appointed to mediate the custody issue. Whitfield testified that he conducted mediation sessions in May 1999, January 2000, and February 2000. In the course of these sessions, he interviewed both parents, both children, a child protective services social worker, and a psychologist.

According to Whitfield, Mother said she would leave Turhan home alone from time to time. He had serious concerns about Mother's judgment based on her willingness to leave Turhan unattended and on his observations of her during the mediation sessions. He also had the impression Mother was not emotionally or psychologically stable. He believed she had an obsessive preoccupation with her former relationship with Father and might be using Turhan as a tool to continue interacting with Father. Whitfield also testified that Turhan had expressed a preference for Father.

On this record, we cannot say the court abused its discretion in denying Mother's request to regain custody. The court stated it had definite questions regarding Mother's judgment. Those concerns were not unreasonable in light of the December 13 incident and Whitfield's testimony.

Moreover, notwithstanding its concerns, the court remained open to reconsidering the matter. The court several times stated it was willing to appoint an expert to conduct a custody evaluation pursuant to Evidence Code section 730 and to review the matter after receiving the evaluator's report.[1] Accordingly, even if Mother were correct that the court should not have granted custody to Father ex parte, she suffered no ultimate prejudice as the same result was supported by the record at the full evidentiary hearing.

C. *Alleged Improper Delegation of Authority to Mediator*

Mother next contends the trial court effectively delegated its authority to Whitfield, the mediator, when it followed his recommendation that custody remain with Father after the March 27, 2000, hearing. First, Mother cites the fact the court denied her request that it personally interview Turhan and instead relied on Whitfield's report of his interview with Turhan.

---

[1]It appears a new hearing date was set for August 14, 2000, but the record does not reflect whether further proceedings took place on that date, or whether an evaluation was conducted.

Mediation of custody issues is mandatory. (Fam. Code, § 3170, subd. (a).) The report of a mediator in a custody case is "evidence to be weighed with all other evidence . . . ." (*In re Marriage of Rosson* (1986) 178 Cal.App.3d 1094, 1104 [224 Cal.Rptr. 250], disapproved on another point in *In re Marriage of Burgess, supra,* 13 Cal.4th 25, 38, fn. 10.) Thus, the court properly could rely on Whitfield's report of his interview with Turhan. The court certainly had the option of personally interviewing Turhan, with the consent of the parties. (See, e.g., *Tarling v. Tarling* (1960) 186 Cal.App.2d 8, 11 [8 Cal.Rptr. 621].) However, "there is no absolute requirement that minors always be interviewed . . . ." (*In re Jack H.* (1980) 106 Cal.App.3d 257, 269 [165 Cal.Rptr. 646].)

In fact, the court is only required even to consider the preference of the child if the child "is of sufficient age and capacity to reason so as to form an intelligent preference as to custody . . . ." (Fam. Code, § 3042, subd. (a).) We are not aware of any reported decision holding that a child of five years, such as Turhan, is of such capacity. As the court in this case pointed out, it was doubtful whether a five-year-old child could realistically determine his own best interest. We therefore find no abuse of discretion in the court's failure to interview Turhan.

Mother also argues the court's reliance on Whitfield deprived the parties of the right to representation by counsel. Apparently, she refers to the fact that Whitfield did not include counsel for the parties in his interviews.

A mediator has authority to exclude counsel from participation in mediation proceedings if, in the mediator's discretion, exclusion of counsel is appropriate or necessary. (Fam. Code, § 3182, subd. (a).) Here, as stated, Whitfield testified at the custody hearing on March 27, 2000. Thus, he was subject to full cross-examination, affording counsel adequate opportunity to explore any perceived deficiencies in his understanding of the facts or his conclusions. We find no deprivation of the right to counsel in the fact that counsel were not permitted to attend the mediation sessions themselves.

■ Mother next contends that the court improperly viewed itself as an "appeals court" in reviewing Whitfield's recommendation. She notes the court stated that in the absence of other evidence it was inclined to follow Whitfield's recommendation, since Whitfield had spoken to the parties and other persons and therefore had more facts than the court did.

We do not view the court's statement as an indication that it was unwilling to exercise its independent judgment. The court merely acknowledged, correctly, that Whitfield was more familiar with the facts from having

conducted mediation sessions over several months. Nonetheless, the court held its own evidentiary hearing at which it heard testimony directly from both parties as well as from Whitfield. The court thus had ample basis on which to make its own determination of the custody issue, and we must presume it performed its duty to do so. (Evid. Code, § 664.)

*Ruisi v. Thieriot* (1997) 53 Cal.App.4th 1197 [62 Cal.Rptr.2d 766], on which Mother relies, is readily distinguishable. In that case, the trial court purported to refer " 'any and all issues regarding custody' " to a special master, without the consent of both parties. (*Id.,* at p. 1209.) As the appellate court observed, Code of Civil Procedure section 639, subdivision (c) limits a special reference to certain categories of issues, which could not reasonably be construed to cover the custody issues involved in *Ruisi.* (53 Cal.App.4th at pp. 1209-1211.)

 Here, in contrast, mediation of the custody issues was not only authorized, but mandatory. By statute, Whitfield had a duty to assess the needs and interests of Turhan, and the authority to submit a recommendation, consistent with local court rules. (Fam. Code, §§ 3180, subd. (a), 3183, subd. (a).) The court did not purport to give Whitfield any authority beyond that granted by the statutes. Thus, no improper delegation occurred.

Mother finally notes that Whitfield was unaware Mother was available full time to care for Turhan and admitted this fact might have affected his recommendation had he been aware of it. However, Whitfield also stated he still had some concerns about Mother's judgment and would like to see a report from a court-appointed evaluator pursuant to Evidence Code section 730 before he would change his recommendation. Moreover, even assuming Mother's availability might have had some effect on Whitfield's recommendation, the court was well aware of Mother's availability from hearing her testimony and must be presumed to have considered that factor in reaching its decision. Therefore, any lack of awareness on Whitfield's part did not affect the outcome.

D. *Exclusion of Evidence of Abandonment and Adultery*

 Mother proposed to present evidence that Father was "an adulterer and he abandoned the marriage not for good cause." The court ruled it would not consider the evidence, stating that "times have changed in the last 50 years." Later, the court sustained Father's objections to questions from counsel for Mother as to why the marriage broke up, and to questions

regarding Father's alleged adulterous relationship after separation. Mother contends this was error, because Father's alleged abandonment and adultery were much more serious and child-endangering than her own conduct of leaving Turhan home alone for a brief time.

■ As a general matter, a trial court is vested with broad discretion in ruling on the admissibility of evidence. The court's ruling will be upset only if there is a clear showing of an abuse of discretion, i.e., that the court exceeded the bounds of reason. (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1431-1432 [77 Cal.Rptr.2d 574].)

■ Turning first to the evidence concerning Father's abandonment of the marriage, we conclude the court properly ruled it was not relevant whether Father had "good cause" to abandon the marriage. That question had no bearing on whether Father could provide an appropriate environment in which to raise Turhan.

Whether Father abandoned his obligation to provide for the children did have relevance in determining his fitness as a custodial parent. But the court did not prevent Mother from presenting evidence on that subject. Mother testified that Father provided no support after he left, though he did pay the rent until January 1999. At that point he stopped paying, and Mother and the children were evicted. Mother also testified that she moved into a mobile-home belonging to Father's mother, but in December 1999 Father and his mother evicted them. Father contradicted this testimony, maintaining that he paid support of $400 per month for awhile and evicted Mother from the mobilehome only at the behest of his own mother. Thus, to the extent the evidence of abandonment was relevant, the facts were adequately before the court when it ruled.

We also conclude the court properly excluded the evidence of Father's alleged adultery. Mother relies on *Currin v. Currin* (1954) 125 Cal.App.2d 644 [271 P.2d 61] (*Currin*), and *Reynolds v. Reynolds* (1957) 149 Cal.App.2d 409 [308 P.2d 921] (*Reynolds*). In *Currin*, the court upheld an award of custody to the father based on evidence that the mother had cohabited with another man while the dissolution was pending. However, there were several additional factors not present here. There was evidence that the mother's companion was intoxicated while at her home and that the mother used vile language toward the father and her brother. Further, the mother and her companion refused to answer questions about their activities on the ground it might tend to incriminate them, suggesting they were engaged in illegal conduct. (*Currin, supra,* at pp. 649-650.) Thus, the court could conclude the

mother's activities might well affect her ability to provide a proper home for the child.

Most importantly, the court in *Currin* merely held it was *not an abuse of discretion* to award custody to the father based on the evidence of adultery and the other circumstances in that case. (*Currin, supra,* 125 Cal.App.2d at p. 651.) It did not purport to hold that evidence of adultery necessarily compels an award of custody to the other parent.

In *Reynolds, supra,* 149 Cal.App.2d 409, the court also denied custody to a mother on the basis of her adulterous affair with another man. But the man in question had an extensive criminal record covering a 17-year period, which included burglaries, petit theft, vagrancy and disturbing the peace. He had spent much of the 17-year period in prison, including a four-year term in San Quentin Prison. (*Id.,* at p. 411.) The court held the trial court reasonably could conclude the mother's relationship with the man, which would bring him into close association with the child, would not be in the best interests of the child. (*Id.,* at p. 413.) No comparable facts are present here.

In addition, as pointed out by the trial court in this case, *Currin* and *Reynolds* are more than 40 years old. More recently, in *In re Marriage of Wellman* (1980) 104 Cal.App.3d 992 [164 Cal.Rptr. 148], the court held invalid an order granting custody to the mother on the condition she have no overnight visitation with a member of the opposite sex in the presence of the children unless she was married to that individual. Although the mother admitted a relationship with a man who frequently stayed at her and the children's residence, the court noted there was no evidence as to the impact of the relationship upon the children. It stated: "It is not the function of a trial court in cases of this sort to punish parents for what the court may regard as their shortcomings, nor to reward an 'unoffending' parent for any wrongs suffered by the 'sins' of the other; '[t]he prime question is, what is the effect upon the lives of the children.' . . . [¶] . . . As our state Supreme Court has explicitly recognized, nonmarital relationships are pervasive in current society, and mores in regard to cohabitation have changed radically, so that courts 'cannot impose a standard based on alleged moral considerations that have apparently been so widely abandoned by so many.' [Citation.]" (*Id.,* at p. 998.)

Here, Mother made no offer of proof that Father's alleged adulterous relationship would adversely affect the home environment he would provide for Turhan. The court reasonably could conclude the evidence of adultery was not relevant to the custody determination.

### III

### Disposition

The order appealed from is affirmed. Respondent shall recover costs on appeal.

Hollenhorst, Acting P. J., and Gaut, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 16, 2001.