Filed 1/23/14  Richard B. v. C.W. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RICHARD B., | D063423 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. DN144475) |
| C.W., | |
| Defendant and Appellant; | |
| V.S. et al., | |
| Objectors and Respondents. | |

APPEAL from an order of the Superior Court of San Diego County, William Y. Wood, Judge.  Affirmed.

C. W., in pro. per., for Defendant and Appellant.

V. S., in pro per, for Objectors and Respondents.

INTRODUCTION

C.W. (mother) appeals from an order denying her request to regain custody of

K.M. (daughter) from V.S. (maternal grandmother).  Mother contends we must reverse

the order because the court did not find mother was an unfit parent and the court based its decision on a flawed Family Court Services report. We discern no reversible error on the record provided and affirm the order.

BACKGROUND

In August 2007 the court ordered daughter, who was then five, placed in the sole custody of maternal grandmother. The court's order permitted mother to have contact with daughter at times mutually agreed upon by mother and maternal grandmother.

In August 2012 maternal grandmother filed an ex parte application for an order directing mother to return daughter to San Diego. In the application, maternal grandmother stated daughter went to visit mother, who lives on the east coast, and mother refused to return daughter The court granted the application and ordered mother to immediately return daughter to California. The court's order additionally affirmed maternal grandmother had sole custody of daughter

The same month, mother requested an order changing custody of daughter to mother. In an unsworn statement appended to the request, mother claimed mother sent daughter to live with maternal grandmother in 2006 because mother was having financial difficulties. Although the record shows mother was a party to the 2007 proceedings awarding custody of daughter to grandmother, mother claimed that she only authorized maternal grandmother to have legal guardianship of daughter and did not know maternal grandmother had sole custody of daughter. Mother further claimed she was now prepared to care for daughter and wanted custody of her.

2

According to a November 2012 report prepared by Family Court Services, daughter primarily resided with maternal grandmother and step-grandfather (maternal grandparents), but had visited with mother each of the two previous summers. During the most recent visit, mother refused to return daughter until the court ordered her to do so. Mother indicated she wanted daughter to live with her and daughter wanted this as well. Daughter wrote a letter and left a voicemail message for maternal grandmother stating she wanted to stay with mother. Maternal grandmother believed mother had coerced daughter into doing these things and was inappropriately involving daughter in adult matters. Mother denied any knowledge of the voicemail message and believed maternal grandmother was being overly dramatic.

The report recommended that maternal grandmother maintain sole custody of daughter. The report noted daughter had resided with maternal grandparents since she was three and "there does not appear to be a reason for a change in the custody arrangement at this time."

The report also expressed concern about mother's unilateral decision to keep daughter, as the decision showed disregard for a child-centered parenting plan as well as for daughter's prior routines and roots in San Diego. In addition, the report expressed concern that mother placed daughter in the middle of a disagreement and did not see how this might be emotionally difficult for daughter.

Because of these concerns, the report recommended mother and daughter each participate in individual counseling. The report also recommended mother's visits with daughter be supervised.

3

The counselor who prepared the report did not interview daughter. The counselor explained in the report, "[i]nformation gathered from the mother and the maternal grandparents was sufficient to make a determination of the child's current experiences and functioning."

At a subsequent hearing in November 2012, the court adopted the report's recommendations and denied mother's request for a custody change. The court's minutes stated, "The terms and conditions of the hearing are reflected in the notes of Court Reporter." A transcript of the hearing was not included in the appellate record.

Consistent with the report's recommendations, the court's "Findings and Order After Hearing" stated maternal grandmother had custody of daughter and daughter was to primarily reside with maternal grandmother. The order permitted mother to have supervised visits with daughter for up to four hours at a time in San Diego and open, supervised "virtual visitation." The order directed mother to participate in individual counseling to develop an understanding of daughter's needs and how to meet them. The order further directed daughter to participate in counseling to debrief any trauma she may have experienced during her visit with mother.

DISCUSSION

I

Mother contends we must reverse the court's order because the court never found mother was unfit to have custody of daughter and there is no evidence supporting such a finding. However, mother has not established the court was required to make such a finding in this case.

4

"Family Code section 3020, subdivision (a) declares that 'the health, safety, and welfare of children shall be the court's primary concern in determining the best interest of children when making any orders regarding the physical or legal custody or visitation of children.' Under Family Code section 3040, subdivision (a), parents are first in the order of preference for a grant of custody, but 'the court and the family' are allowed 'the widest discretion to choose a parenting plan that is in the best interest of the child.' (Fam. Code, § 3040, subd. (b).) Before granting custody to a nonparent over parental objection, the court must find 'clear and convincing evidence' that 'granting custody to a parent would be detrimental to the child and that granting custody to the nonparent is required to serve the best interest of the child.' (Fam. Code, § 3041, subds. (b), (a).)

"In 2002, the Legislature added subdivisions to Family Code section 3041 emphasizing the importance of a stable home environment for the child. [Citation.] It specified that ' "detriment to the child" includes the harm of removal from a stable placement of a child with a person who has assumed, on a day-to-day basis, the role of his or her parent, fulfilling both the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time. *A finding of detriment does not require any finding of unfitness of the parents*.' (Fam. Code, § 3041, subd. (c).) And, 'if the court finds by a preponderance of the evidence that the person to whom custody may be given is a person described in subdivision (c), this finding shall constitute a finding that the custody is in the best interest of the child and that parental custody would be detrimental to the child absent a showing by a preponderance of the evidence to the contrary.' (Fam. Code, § 3041, subd.

5

(d).)  *Thus, the Legislature has determined that the critical finding of detriment to the child does not necessarily turn on parental unfitness.  It may be based on the prospect that a successful, established custodial arrangement would be disrupted.*"  (*Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1123-1124, italics added.)  This appears to be the exact basis for the court's decision in this case.

Additionally, while mother may not have intended for maternal grandmother to obtain custody of daughter in 2007, the record shows mother was a party to the 2007 proceedings and there is no indication she appealed the court's 2007 decision.  Consequently, the decision has long been final as to mother and mother has not established its propriety is properly before us in this appeal.  Regardless, mother's original intention in leaving daughter with maternal grandmother has no bearing on whether returning daughter to mother's custody at this juncture would be detrimental to daughter or whether leaving daughter in maternal grandmother's custody would be in daughter's best interest.  (*Guardianship of Vaughan* (2012) 207 Cal.App.4th 1055, 1072.)

II

Mother also contends we must reverse the court's order because the court based the order on a flawed Family Court Services report.  The record does not show mother objected to the report below.  Assuming, without deciding, mother has not forfeited her challenges to the report, we are not persuaded any of the identified flaws warrants reversal of the order.

Among the identified flaws, mother faults the counselor who prepared the report for failing to interview people familiar with mother's parenting skills and parental fitness.

6

However, as previously explained in part I, *ante*, mother's fitness as a parent is not at issue in this case.

Mother also contends the counselor bonded with and was biased in favor of maternal grandparents because the counselor was able to have face-to-face meetings with them. As proof of the bias, mother references the counselor's adverse recommendations. Generally, adverse decisions are not sufficient to show bias. (See *People v. Avila* (2009) 46 Cal.4th 680, 696.) Mother has not cited to any authority, nor are we aware of any, indicating a contrary rule should apply here.

Finally, mother faults the counselor who prepared the report for failing to interview daughter to determine daughter's wishes. Family Code section 3042, subdivision (a), provides, "If a child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody or visitation, the court shall consider, and give due weight to, the wishes of the child in making an order granting or modifying custody or visitation." "However, 'there is no absolute requirement that minors always be interviewed.' " (*In re Marriage of Slayton & Biggums-Slayton* (2006) 86 Cal.App.4th 653, 659.) "In many cases it may be quite unwise to inquire as to the child's preference; doing so may destroy what little good will is left between the [parties] or between one of the [parties] and the child." (*Stack v. Stack* (1961) 189 Cal.App.2d 357, 364-365.)

This appears to be such a case. The counselor who prepared the report had obvious concerns about daughter being placed in the middle of a custody dispute between mother and maternal grandmother. Inferably, the counselor recommended daughter receive therapy for possible trauma because of these concerns. The counselor also stated

7

in the report that she was able to obtain enough information from mother and maternal grandparents to make recommendations without speaking with daughter. Moreover, there is no evidence in the record daughter desired to be interviewed by the counselor or to speak directly with the court. Additionally, mother's request for a custody change included a handwritten statement from daughter expressing daughter's desire to stay with mother. Nothing in the record indicates the court refused or failed to consider this statement in determining whether a custody change was in daughter's best interest. Accordingly, mother has not established the counselor's failure to interview the daughter warrants reversal of the court's order.

## DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

O'ROURKE, J.