Filed 3/13/23  Marriage of Freeman CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of VANESSA and MICHAEL A. FREEMAN. | |
| VANESSA FREEMAN, Appellant, v. MICHAEL A. FREEMAN, Respondent. | F083677 (Super. Ct. No. FL-18-001082) **OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Stanislaus County.  Alan K. Cassidy, Judge.

Vanessa Freeman, in pro. per., for Appellant.

No appearance for Respondent.

-ooOoo-

Vanessa Freeman, representing herself, appeals from an order awarding physical custody of her daughter to Michael Freeman.[1]  Vanessa raises wide-ranging claims in

---

[1] According to the record, Vanessa and Michael are married but separated.

pursuit of "new orders granting [her] sole physical custody" or, alternatively, a "proper long cause hearing in front of a different court/ judge."

In designating the record on appeal, Vanessa filed form APP-003[2] and originally elected to proceed with the reporter's transcript on appeal. The form specifically references the "Transcript Reimbursement Fund" (Bus. & Prof. Code, § 8030.2 et seq.), but Vanessa did not attach a copy of any reimbursement application.

The superior court issued Vanessa a "notice of default" because she failed to "deposit the cost of preparation of the Reporter's Transcript …." Vanessa subsequently filed a corrected designation, electing instead to proceed without a reporter's transcript while acknowledging her election would severely limit this court's review.

The "Clerk's Transcript" was prepared "at no cost" due to the fact "a fee waiver … was granted …." As Vanessa later explained, she "was under the impression the reporters' fees for transcripts for the record would be covered under [the] fee waiver …."[3]

We have carefully reviewed the record with these facts in mind. We will affirm the trial court's September 8, 2021, order.

## BACKGROUND

In early 2021, Vanessa filed an "ex parte application for orders" seeking injunctive relief after Michael allegedly refused to return their then 11-year-old daughter in compliance with the child custody order in place at the time. The trial court granted temporary emergency orders awarding sole physical custody to Vanessa by removing visitation from Michael and ordered Michael to return the minor child to Vanessa. The case was set for a regular hearing.

---

[2] APP-003 is the official record designation form approved for use by the Judicial Council of California.

[3] This explanation is contained within Vanessa's brief.

Prior to the hearing, Michael replied to Vanessa's request for orders. Michael asked for temporary custody and claimed he kept his daughter "[f]or [h]er [s]afety" and "[w]asn't [w]illing [t]o [h]and [h]er [o]ver [t]o [h]er [a]buser."

At the hearing, the court left in place temporary orders including "sole physical custody" to Vanessa and ordering "[n]either party [to] say anything, do anything, or allow any conduct which might tend to alienate the affections of the minor child[] for the other parent." The case was again continued for a "hearing on the Family Court Services Evaluator's Report."

A few days later, Vanessa filed for a "change" in orders because Michael "alienated" their daughter's "feelings." Specifically, Vanessa sought "[n]o visitation [for Michael] until supervised visitation can be arranged." The judge issued temporary orders consistent with the request.

After the hearing, Michael filed for temporary emergency orders, seeking "full custody of [his] daughter … due to the physical/mental abuse that Vanessa … continues to give to [their] daughter." The court denied the request "until hearing/mediation."

On May 4,[4] the court held a hearing after receiving the aforementioned report. The court found "an immediate concern for the [child's] well-being" and "generated" "[f]ormal custody orders …." The orders awarded Michael with "sole physical custody" and all "non-designated time with the [child]." They also reiterated the prior anti-alienation order.

Because Vanessa objected to the report and orders, the case was set for trial. In the interim before trial, Vanessa continued to file various requests for orders seeking to regain physical custody of her daughter.

On September 8, the court held a trial on Vanessa's "objection to" the report. The trial was not transcribed, but the minute order indicates the court "read and considered all

---

[4] Unless otherwise stated, all references to dates are to dates in 2021.

pleadings and declarations from June through and including current to date," the "[p]arties provide[d] testimony," and Vanessa's counsel argued the matter.

The court, in confirming custody of the minor child to Michael, ruled as follows:

> "The Court considers all evidence and testimony presented by both sides; after consideration of the aforementioned, the Court finds minor child should/shall be in counseling forthwith.

> "The Court is going to follow the recommendation found in Ms. King's report.

> "Court reiterates and strongly orders parents to be make sure minor child is engaged in counseling.

> "Court further orders a report form [sic] the minor child's counselor at the next hearing."[5]

The case was subsequently set for a "Status Review Hearing."

Vanessa continued to challenge the court's custody orders, including filing a nonstatutory motion to reconsider.[6] The court ultimately denied the motion to reconsider. On December 10, Vanessa filed a notice of appeal from the May 4 and September 8 rulings.

## DISCUSSION

Vanessa raises numerous issues. She argues venue was improper, her fundamental rights were violated, the court abused its discretion by delegating authority to the "mediator," "improper application of the rules of evidence," the "mediator" violated the California Rules of Court, the court was biased and abused its discretion, and her trial counsel was ineffective.

---

[5] This ruling is contained within the minute order.

[6] The record contains no actual motion to reconsider. It appears Vanessa included "reconsideration" as part of a request-for-orders filing on September 22. On November 9, the court calendared a "Motion for Reconsideration" to be heard on November 30.

On our own, we consider whether Vanessa's claims are appealable. We conclude an appeal from the September 8 hearing is timely.

Addressing the issues on the merits, as best we can due to the limited record and briefing, we find no error. We will affirm the trial court's September 8 order.

## I. Appealability

"A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment." (*Griset v. Fair Political Practices Com'n.* (2001) 25 Cal.4th 688, 696.) " 'Compliance with the time for filing a notice of appeal is mandatory and jurisdictional. [Citation.] If a notice of appeal is not timely, the appellate court must dismiss the appeal.' " (*City of Calexico v. Bergeson* (2021) 64 Cal.App.5th 180, 189.)

California Rules of Court, rule 8.104[7] sets the time to appeal at "60 days after" the appealing party is served with "a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment …." (Rule 8.104(a)(1)(A) & (B).) If there is no service, then the time to appeal is "180 days after the entry of judgment." (Rule 8.104(a)(1)(C).)

Here, there is no notice of entry of judgment nor is there a filed-endorsed copy of the judgment. Accordingly, the time to appeal was 180 days. The September 8 ruling falls within 180 days from the date the notice of appeal was filed, but the May 4 ruling does not.

The remaining question is whether the September 8 ruling is legally appealable. Orders modifying final custody judgments are appealable as orders made after a final judgment. (*Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1377-1378; Code Civ. Proc., 904.1, subd. (a)(2).) We construe the September 8 ruling as an order after judgment because it was made after a contested trial where the court essentially finalized

---

[7] All rule references are to the California Rules of Court.

the emergency orders adopted on May 4. (See *Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901 [describing " 'well-established policy … of according' " right to appeal " 'in doubtful cases' "].) Accordingly, the September 8 ruling is appealable.

## II. Limitations Due To No Reporter's Transcript

"Under well-established principles of California's constitutional doctrine of reversible error, an order of the lower court is presumed correct—that is, all intendments and presumptions are indulged to support it on matters as to which the record is silent—and the appellant must affirmatively demonstrate prejudicial error. [Citation.] Appellants fail to carry the burden of affirmatively demonstrating error if they, among other things, do not provide an adequate record on appeal …." (*Herrera v. Doctors Medical Center of Modesto* (2021) 67 Cal.App.5th 538, 547.)

An appeal without a reporter's transcript is treated "as an appeal 'on the judgment roll,' to which the following rules apply[.] ' "Error must be affirmatively shown by the record and will not be presumed on appeal [citation]; the validity of the judgment [or order] on its face may be determined by looking only to the matters constituting part of the judgment roll [citation]; where no error appears on the face of a judgment roll record, all intendments and presumptions must be in support of the judgment [citation] [citation] … and any condition of facts consistent with the validity of the judgment will be presumed to have existed rather than one which would defeat it .…" ' "[8] (*Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574-575 (*Elena S.*).)

---

[8] Only two hearings were transcribed: October 6 and November 30. The October 6 minute order leads us to believe the court simply continued the matter to another date because Michael failed to appear. The November 30 hearing was the nonstatutory motion to reconsider, but this ruling is not appealed. (Cf. *Tate v. Wilburn* (2010) 184 Cal.App.4th 150, 158-160 [statutory motion to reconsider not appealable]; *Ellis v. Ellis* (2015) 235 Cal.App.4th 837, 846 [appellate "jurisdiction is 'limited in scope to the notice of appeal and the judgment appealed from.' "]) These two missing transcripts appear immaterial, except to the extent they might reveal judicial bias and ineffective counsel. We consider those possibilities *post*.

" 'Where it does not appear affirmatively that a jurisdictional defect was present, the absence of a recital that jurisdictional requisites were met does not produce a judgment void on its face. [Citations.] To the contrary, all presumptions favor the judgment. [Citations.] If the invalidity does not appear on the face of the record, it will be presumed that what ought to have been done was not only done but rightly done.' " (*Elena S., supra,* 247 Cal.App.4th at p. 575.)

## III. Venue

Vanessa claims "[w]hen [she] filed [her] request to have the orders modif[ied], [she] was in fact requesting a change of venue." Based on this explanation, there is, not surprisingly, no motion to change venue in the record.

Indeed, in the original filings Vanessa refers to, i.e., her January 2021 filings, there is no mention of venue. Because venue is not jurisdictional, we cannot address the claim for the first time on appeal. (See *Capra v. Capra* (2020) 58 Cal.App.5th 1072, 1083.)

Most importantly, there is nothing in the record to suggest venue was improper. (See Code of Civ. Proc., § 395.) Finally, because Vanessa's primary complaint relative to venue is the fact "the parties and witnesses … would have had to travel from Solano and Yuba County [sic]," there is no prejudice because the record indicates everyone appeared as necessary in the trial court.

## IV. Due Process

Next, Vanessa contends she did not receive notice "custody was at stake" because Michael's request for full custody was not properly served. We disagree.

### A. Additional Background

Michael first requested full custody by filing a request for orders on February 23. The April 6 minute order states the case was continued to May 4 for a hearing on *both* Vanessa's and Michael's requests to modify the child custody order. At the May 4 hearing, the court modified custody by removing from Vanessa physical custody of the child and awarding custody instead to Michael.

7.

### B. Analysis

Because there is no reporter's transcript, we must presume the court's orders were valid. (*Elena S., supra,* 247 Cal.App.5th at pp. 574-575; see Evid. Code, § 664 [presumption official duty performed, meaning trial court would not have acted improperly].) Although there is no proof of service in the record indicating Michael served Vanessa with his request for full custody, the April 6 minute order stating the case was set for a hearing on Michael's request is sufficient to presume it was properly served.[9]

In any event, a court is authorized to grant or modify "a custody order on an ex parte basis" if "there has been a showing of immediate harm to the child …." (Fam. Code, § 3064, subd. (a).)[10] Here, the court made that requisite finding when, on May 4, it first ordered sole physical custody of the child to Michael.[11]

## V. Court Did Not Delegate Authority to "Mediator"

"Mediation of custody issues is mandatory. (Fam. Code, § 3170, subd. (a).) The report of a mediator in a custody case is 'evidence to be weighed with all other evidence ….' " (*In re Marriage of Slayton* (2001) 86 Cal.App.4th 653, 659 (*Slayton*).)

While it is true the court ultimately adopted the recommendations in the report at issue,[12] that is not improper delegation—the court itself made the order after a contested

---

[9] Notably, the record between Michael's filing and the May 4 hearing supports this conclusion. When Michael filed his request for full custody, the court noted "personal service is required." On March 16, the court continued the case for further hearing on Vanessa's request but not Michael's request. The April 6 minute order is the first time Michael's request for custody was calendared for a hearing the following month, strongly suggesting it was properly served.

[10] Subsequent statutory references are to the Family Code unless otherwise stated.

[11] We also note the matter was ultimately set for a full and contested hearing at which Vanessa appeared with counsel and presented evidence.

[12] As mentioned *post*, the challenged report is not a mediation report but rather a "child custody evaluation" under section 3111. "The report may be received in evidence

hearing.  Accordingly, the court did not improperly delegate its authority.  (See *Slayton, supra,* 86 Cal.App.4th at p. 660.)

Vanessa's main contentions on this point are "the court bullied [her] into stipulating" to receiving the report in evidence, the court "state[d] that parental alienation did not exist," and "refused to hear from" her other daughter as a witness.  These arguments are better considered as evidentiary error, judicial bias, and ineffective counsel.  We address them *post.*

## VI.  Purported Evidentiary Violations

Here, Vanessa claims the court improperly "based its decision on the child's preference as stated in the mediation report," "relied solely on the statements [her] daughter made in the mediation evaluation without verify[ing] the truth of them," and the abuse claims "are hearsay."  In summary, Vanessa argues:

> "[T]he evidence on [one] side is statements made by [Michael] and then repeated by our daughter.  On the other side the evidence presented was documentation from [a] qualified licensed professional in the [m]ental health field who evaluated my mental state of mind and came to the conclusion that I was of sound mind and did not qualify for any type of treatment but would benefit from family counseling with my daughter.  The same type of counseling that I was already in the process of receiving.  Drug test results from a creditable [sic] third party which included hair follicle test along with random drug test results ….  Documentation … that all of the [abuse] allegations that they investigated were unfounded.  A statement that directly contradicted the statement in the mediation report which said the investigations [were] inconclusive and suggested that they were incomplete.  The moving party or the party requesting a change in a custody has the burden of proof."

---

on stipulation of all interested parties and is competent evidence as to all matters contained in the report."  (§ 3111, subd. (c); see **VII.,** *post.*)

She concludes the court thus erred because the burden of proof was not satisfied. We disagree.

### A. Child's Stated Preference

"If a child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody or visitation, the court shall consider, and give due weight to, the wishes of the child in making an order granting or modifying custody or visitation." (§ 3042, subd. (a).) Because there is no reason to believe the 12-year-old child in this case was insufficient in age or reason, the court was *required* to consider the child's preference. The court did not err by following the law.

### B. Testimony From Vanessa's Other, Adult Daughter

As to whether the court refused to allow Vanessa's other daughter to testify, the claim is not supported by the record. Nowhere in the record is there a statement the court refused to allow Vanessa to present the witness' testimony. Even if the court did err, Vanessa has not demonstrated a reasonable probability of a better result.[13] (See *In re Celine R.* (2003) 31 Cal.4th 45, 59-60 ["reversal [appropriate] only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error."].)

More importantly, " '[a] trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446-447.) "[I]t is the burden of appellants to show

---

**13** Vanessa urges us to "[p]lease see the letter" written by her other daughter. We have reviewed the letter because it is part of the record. (Rule 8.204(d).) We do not believe Vanessa would have received a more favorable result had she elicited testimony consistent with the letter.

that it is reasonably probable that they would have received a more favorable result … had the error not occurred." (*Id.* at p. 447.) Vanessa has not discharged this burden.

### C. Credibility Resolution

The remaining contentions essentially challenge credibility determinations. But " ' "[o]n appeal all presumptions favor proper exercise" ' of the trial court's power to ' "judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences' ' and its ' "findings—whether express or implied—must be upheld if supported by substantial evidence." ' " (*People v. Alexander* (2010) 49 Cal.4th 846, 883.) " ' " '[W]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its [discretion] for that of the trial court.' " ' " (*In re Caden C.* (2021) 11 Cal.5th 614, 640.) We are not at liberty to disagree with the trial court's implied credibility determinations because they *are* supported by substantial evidence.

### D. Abuse of Discretion

Generally speaking, " '[t]he standard of appellate review of ... visitation orders is the deferential abuse of discretion test. [Citation.] The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the "best interest" of the child. We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked.' " (*Rich v. Thatcher* (2011) 200 Cal.App.4th 1176, 1182.) " ' "Broad deference must be shown to the trial judge. The reviewing court should interfere only ' "if [it] find[s] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did." ' " ' " (*Ibid.*)

The trial court here ruled only after it "consider[ed] all evidence and testimony presented by both sides …." Because its ruling is not patently unreasonable, it did not abuse its discretion.

## VII.  California Rules of Court, rules 5.210 & 5.220

According to Vanessa, "the court adopted the mediators [sic] report in full after the mediator spoke to [her] child once, without conducting any type of investigation or inquiry into the allegations made during the mediation."  She also contends the mediator failed to follow the rules delineated in rule 5.210.  Chief among her complaints is the allegation "[t]he mediator … did not contact [her]" and "did not attempt to speak" to her other daughter.

In truth, the report at issue is pursuant to section 3111 and is conducted by a "child custody evaluator," not a mediator.[14]  The procedure underlying the evaluator's report is prescribed in rule 5.220.  Nonetheless, we address Vanessa's complaints.

The allegation the evaluator did not contact Vanessa is flatly contradicted by the report.  Not only did the evaluator confer with Vanessa, but the evaluator agreed with her on some points, for example, the abuse allegations were not substantiated by an investigating agency.

Contrary to Vanessa's contention, we are certain the report itself is impartial and fair.  There is no requirement the evaluator interview *any* witness.  (Rule 5.220, subd. (e).)

Finally, the court did not abdicate its role by simply adopting the recommendations in the report.  Again, it held a full hearing on September 8 and considered all evidence and testimony before issuing a ruling.

## VIII.  No Judicial Bias

Canon 3B(5) of the California Code of Judicial Ethics states a judge must "perform judicial duties without bias or prejudice."  Due process mandates an impartial

---

[14] No report was included with the Clerk's Transcript.  On our own motion, we augmented the record with the evaluation report at issue.

and disinterested tribunal in both civil and criminal cases. (*Marshall v. Jerrico, Inc.* (1980) 446 U.S. 238, 242-243.)

"Absent a financial interest, adjudicators are presumed impartial. [Citations.] To show nonfinancial bias sufficient to violate due process, a party must demonstrate actual bias or circumstances ' "in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." ' [Citation.] The test is an objective one. [Citations.] While the 'degree or kind of interest … sufficient to disqualify a judge from sitting "cannot be defined with precision" ' [citation], due process violations generally are confined to 'the exceptional case presenting extreme facts ….' " (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 219.)

To demonstrate bias, Vanessa offers a number of examples. Among others, she claims the court "allowed [Michael] to violate the original order as well as the current order," "accepted filing[s] from [Michael] that were not properly filled out,"[15] and ultimately "told [her] to stop filing declarations and request[s] because [it] would not give [her] custody back."

We have carefully considered each example and find no bias.[16] Most alarming is the purported statement the court admonished Vanessa to stop seeking physical custody of her daughter because it would not find in her favor. No such statement appears in the record. We note Vanessa alleges this statement occurred on two different dates:

---

[15] Vanessa claims, in one request-for-orders filing, Michael named himself as the petitioner and her as the respondent. But this filing was a request *from* Michael. Even if incorrect, this fact fails to move the needle towards objective—and exceptional—bias. (Cf. *People v. Pearson* (2013) 56 Cal.4th 393, 447 [" '[A] trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review.' "].)

[16] For example, the court issued a warrant for Michael's arrest when he failed to appear on October 6. This hardly demonstrates favoritism.

September 8 as written in the notice designating record on appeal, or November 30 as suggested in her brief.[17]

Vanessa continued to litigate custody after September 8. The court even entertained a nonstatutory motion to reconsider, allowing Vanessa's attorney to twice argue the matter. After twice denying the motion, the court still set the case for "status review" on a future date. These facts do not demonstrate bias. Rather, they indicate a quite accommodating and patient court.[18]

## IX. Ineffective Counsel

Last, Vanessa asserts her attorneys[19] rendered ineffective assistance. She cites to various disagreements with counsels' performances, believing they ultimately undermined her case.

---

[17] In her brief, filed on August 16, 2022, Vanessa claims the court "told [her] to stop" litigating custody at "the next hearing after … November 9 …." The next hearing was November 30. The November 30 hearing was transcribed but again there is no transcript on appeal.

A "reviewing court" may, on its own motion, order the record augmented with the reporter's transcript "to prevent a miscarriage of justice." (Rule 8.130(a)(4).) The California Supreme Court "has not yet addressed the question under what circumstances an in forma pauperis civil litigant may be entitled to obtain a free reporter's transcript when such a transcript is essential to the resolution of the litigant's appeal on the merits." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 624.) In the absence of such authority, we decline to augment the record.

In the notice designating record on appeal, filed on December 30, Vanessa asserts, "[T]he judge told me that his ruling was final and would not be changed for any reason[,] he verbally ordered me to stop filing papers in this action because he would not change custody no matter what." This statement allegedly occurred on September 8, 2021. The notice, filed much closer in time to this allegation, does not repeat the claim the judge verbally admonished Vanessa to stop in *November*. We presume the notice is correct.

[18] Another major point Vanessa raises is "[t]he court went so far as to state that parental alienation did not exist." But the custody orders consistently barred alienation.

[19] Two separate attorneys represented Vanessa at various stages of the proceedings.

14.

" '[T]he general rule is that there is no due process right to counsel in civil cases. [Citation.]  Generally speaking, the right to counsel has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation.' " (*In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1574.)  "Indeed, the general rule is that attorney neglect in civil cases, if any, is imputed to the client." (*Id.* at p. 1575.)

While we do not foreclose some right to counsel, we note Vanessa has failed to explain how counsels' performances prejudiced her case warranting relief.  In other words, she has not carried her burden to prove her attorneys' alleged errors resulted in an outcome worse than she would have received absent those errors.  (*In re Marriage of Dellaria & Blickman-Dellaria* (2009) 172 Cal.App.4th 196, 205 [" 'appellant bears the duty of spelling out in his [or her] brief exactly how the error caused a miscarriage of justice.' "].)  Our independent review leads us to conclude the record—as expected— does not contain enough information to evaluate counsels' performances.  (Cf. *People v. Mickel* (2016) 2 Cal.5th 181, 198 ["certain practical restraints make it more difficult to address ineffective assistance claims on direct appeal ….  [Citations.]  The record on appeal may not explain why counsel chose to act as he or she did."].)

## DISPOSITION

The September 8, 2021, order is affirmed.  Vanessa will bear her costs on appeal.


SNAUFFER, J.

WE CONCUR:


DETJEN, Acting P. J.


MEEHAN, J.

15.