Filed 2/13/26  Truong v. Bailey CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LINH TRUONG,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH ROBERT BAILEY,<br><br>Defendant and Appellant. | F089676<br><br>(Super. Ct. No. 22CEFL03580)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the nonpublished opinion filed on January 23, 2026, be modified as follows:

1.　　　On page 6, the first paragraph, the last sentence beginning with "Father requested the second weekend of every month … " is deleted and replaced with:

Father requested the second weekend of every other month until Tuesday morning and his custodial time on any non-school Tuesday and Friday be extended to 12:00 p.m.

2.　　　On page 9, the last paragraph, the last sentence beginning with "Father requests the order be modified as follows: (1) visitation with father … " is deleted and replaced with:

Father requests the order be modified as follows:  (1) visitation with mother on the second weekend of every other month; (2) 96 hours of visitation with father for the "American New Year[]" or no New Year visitation

ordered for either parent; and (3) if mother continues her relationship with B.S., she must not do so during her periods of parenting time.

3.    On page 16, the last paragraph, the first sentence beginning with "Father asked the trial court to order visitation with him … " is deleted and replaced with:

Father asked the trial court to order visitation with him for the second weekend of every other month and disagreed with mother having visitation for 96 hours during "Vietnamese Tet/Lunar New Year."

Except for the modifications set forth above, the opinion previously filed remains unchanged.  This modification does not effect a change in the judgement.

Appellant's "PETITION FOR REHEARING," filed on January 30, 2026, is denied.

                                                                          Levy, A.P.J.

I CONCUR:

FRANSON, J.

2.

Filed 1/23/26  Truong v. Bailey CA5 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| LINH TRUONG, | F089676 |
| Plaintiff and Respondent, | (Super. Ct. No. 22CEFL03580) |
| v. | |
| JOSEPH ROBERT BAILEY, | **OPINION** |
| Defendant and Appellant. | |

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Glenda S. Allen-Hill, Judge.

Joseph Robert Bailey, in propria persona, for Defendant and Appellant.

Linh Truong, in propria persona, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Franson, J. and Snauffer, J.

Joseph Robert Bailey (father), in propria persona, appeals from a final order for child custody and visitation involving his son with respondent and former partner Linh Truong (mother). The trial court ordered joint legal and physical custody to both parents with primary custody with mother and custody with father on specified weekends. We conclude father fails to meet his affirmative burden of showing the court abused its discretion. We therefore affirm the court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

Father and mother were in a relationship but unmarried when they had a son, L.B., in February 2017. The pair separated in 2021 and informally shared custody of L.B.

In 2022, mother filed a petition to determine parental relationship. Father and mother stipulated to paternity and a paternity judgment was entered in June 2024 with issues of child custody, child visitation, and child support reserved.

In August 2024, mother filed a request for order (RFO) seeking joint legal and physical custody of L.B. with primary custody to her. Father filed a responsive declaration contesting the RFO and requesting "50/50" custody with himself as the primary parent. Neither parent was represented by an attorney throughout these proceedings.

On October 14, 2024, the trial court referred the parties to a mandatory tier 1[1] mediation with family court services (FCS). The parties participated in a tier 1 mediation in December 2024 but were unable to reach an agreement.

The trial court held a hearing on January 3, 2025. According to the minute order, mother requested a tier 2[2] mediation while father requested to argue the matter. Father

---

[1]     The tier 1 mediation is confidential except the mediator reports on, but does not comment on, the parties' agreement or inability to reach an agreement. (Super. Ct. Fresno County, Local Rules, rule 5.5.2(B)(4).)

[2]     Tier 2 sessions "provide the Court with additional information regarding specific areas deemed significant by the Judicial Officer. A [t]ier [2] summary report shall be provided to the Court and parties which may include, but not be limited to, a description

was directed to file and serve any documentation relating to the allegations he had made in court at least 10 days prior to the next hearing. The court referred the parties for a tier 3[3] mediation. Despite this referral, the court erroneously issued an order for a tier 2 mediation on January 6, 2025.

On January 6, 2025, FCS emailed notice to father that a tier 2 mediation had been scheduled for February 3, 2025. Father responded that a tier 3 mediation had been ordered by the trial court. FCS replied that the referral sent to its office indicated a tier 2 mediation had been set, and that if, after completing the tier 2 mediation process, the court felt a tier 3 mediation was necessary, a subsequent referral could be made. FCS stated it was unable to make that change. Father sent additional emails reiterating the matter should be set for a tier 3 mediation. FCS referred the matter to an FCS manager, and the tier 3 mediation was set for the same date as the original appointment.

The parties participated in the tier 3 mediation and the mediator prepared a report reflecting her findings and recommendations. The report noted the case was originally set for a tier 2 mediation due to an error on the minute order. FCS had confirmed with the trial court that a tier 3 mediation was ordered, and the tier 2 appointment was modified. The report stated: "despite the notification of the correction [father] continued to assert that somehow this initial error was a conspiracy within the Fresno Superior Court [s]ystem and was being orchestrated by [mother] in an attempt to disregard his concerns." FCS referred the matter to a manager to allay father's concerns.

---

of collateral contacts with law enforcement or [c]hild [p]rotective [s]ervices, interviews with the child(ren), etc. The [t]ier [2] summary report will not include any recommendations from the mediator." (Super. Ct. Fresno County, Local Rules, rule 5.5.2(C)(1)(a).)

[3] Tier 3 sessions "shall result in a report and recommendation from the counselor. The counselor's recommendation shall be made available to the parties, at the FCS office, two … court days before the court hearing. If the recommendation is not available before the hearing, it shall be available in court at the time of the hearing." (Super. Ct. Fresno County, Local Rules, rule 5.5.2(C)(1)(b).)

3.

The mediator's report discussed in pertinent part that father was concerned L.B. was unsafe in mother's care because her current partner, B.S., was a convicted felon. The mediator concluded she was not provided with credible information to suggest B.S. was a threat to L.B. The narrative provided by mother about B.S.'s criminal offense included "violent and inappropriate actions" by B.S. and did not appear to be a "strategic version of events created to completely dismiss any wrongdoing" on his part. Father was dismissive of the documentation mother provided indicating B.S.'s charge had been reduced to a misdemeanor and claimed mother was a "pathological liar." The mediator found the documentation unclear if the conviction was reduced from a felony to a misdemeanor, but even assuming it was a felony, she noted the events happened over two decades ago, and there did not appear to be any additional incidents of violence since then. The mediator spoke with L.B. at length about his experiences in mother's home and specifically with B.S. L.B. described feeling comfortable with and having regular, positive interactions with B.S., and nothing he described alluded to any aggressive or criminal activity by B.S. The mediator concluded she could not support father's assertion that B.S.'s past criminal history, even if it was a felony conviction, presented an imminent risk to L.B. at that time. The mediator expressed sympathy for father's concern about L.B.'s safety due to B.S.'s conviction but found "the degree to which [father] is focused on this conviction, despite the fact that the conviction is decades old and there is no evidence of immediate danger to the child, suggests a level of focus on this factor that is not appropriate or productive."

The mediator expressed concern in her report about L.B.'s emotional welfare due to exposure to mother's actions that "perpetuat[ed] and intensif[ied] the parental conflict," including her use of L.B. as a messenger to father. The mediator reiterated her concern regarding father's "elevated emotions" about and "heightened focus" on B.S. Father acknowledged he grabbed B.S.'s shirt and told him to " 'stay the f[***] away from my son' " in front of L.B. at a basketball game. Though the mediator was concerned both

4.

parents had exposed L.B. to parental conflict through inappropriate and aggressive behavior in L.B.'s presence, she found L.B. was physically safe with each parent, significantly attached to both parents, and had grown accustomed to having significant contact with both parents. The mediator, therefore, recommended the parents continue to share joint physical custody. The report noted neither parent was requesting a significant modification to the custodial schedule and father was forthcoming about his limited availability for additional custodial time. It was recommended the current custodial schedule remain with primary residency with mother and weekends with father. To provide mother with unscheduled weekend time, the report recommended L.B. remain with mother the second weekend of the month and father's custodial time be extended to Tuesday mornings. The mediator recommended mother complete a coparenting program and father participate in individual counseling services.

On February 18, 2025, father filed a declaration requesting "50/50 parenting time until [he] can seek full time custody." He attached a written summary of allegations regarding mother's conduct with dates for certain incidents.

At a hearing on March 11, 2025, the trial court noted the minute order for January 3, 2025, referred the parties for a tier 3 mediation but there was a referral for both a tier 2 and tier 3 mediation. The court further noted the error stemmed from the courtroom, not FCS. The matter was continued to permit the parties to submit additional documentation.

Father subsequently filed a declaration with documentation regarding B.S.'s arrest in Washington state in 2002 including a case summary from Yakima County, Washington. Mother filed a responsive declaration with attachments including emails between her and father, and a 2024 order from the Yakima County Superior Court granting B.S.'s petition to vacate his 2002 convictions.

The trial court held a hearing on March 24, 2025. Mother asked the court to adopt the mediator's recommendation. Father disagreed with the mediator's recommendation

5.

regarding his enrollment and participation in individual counseling. He also disagreed with mother having custody for 96 hours for Chinese New Year and requested his parenting time during the holidays extend to 10:00 a.m. or 12:00 p.m. Father requested the second weekend of every month until Tuesday morning and his custodial time on any non-school Tuesday and Friday be extended to 12:00 p.m.

On April 9, 2025, the trial court issued its ruling. The court ordered joint legal and physical custody of L.B. to both parents with primary residence with mother. Father was given custody for the first, third, fourth, and fifth weekends of the month. The weekend would end on Tuesday at the end of the school day or 12:00 p.m. if there was no school. Holidays were split between the parents and included 96 hours with mother for "Vietnamese Tet/Lunar New Year." The ruling specified neither parent shall expose L.B. to domestic violence or criminal behavior. The court ordered both parents to enroll in a coparenting program.

Father filed a timely notice of appeal. His opening brief was filed on September 17, 2025. Father's opening brief is the only brief submitted in connection with this appeal. Mother did not file a respondent's brief.[4]

## DISCUSSION

### I. Appellate Principles

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) "Appellants fail to carry the burden of affirmatively demonstrating error if they, among other things, do not provide an adequate record on appeal or do not comply with

---

[4]     We decide the matter based on the record and father's opening brief. (Cal. Rules of Court, rule 8.220(a)(2).) All further rule references are to the California Rules of Court.

6.

certain briefing requirements in … rule 8.204." (*Herrera v. Doctors Medical Center of Modesto, Inc.* (2021) 67 Cal.App.5th 538, 546.) An appellant's failure to provide an adequate record on an issue requires the reviewing court to resolve the issue against the appellant. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.)

The appellant's opening brief must address each claimed error under a clearly identified heading and support each point by argument. (Rule 8.204(a)(1)(B); *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4.) "In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287.) The appellant must "articulate and support his own arguments on appeal in a manner that will make them susceptible of rational evaluation by this court." (*Dahms v. Downtown Pomona Property and Business Improvement Dist.* (2009) 174 Cal.App.4th 708, 719.) We are not required to supply arguments for a party or address issues raised without cogent legal argument. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115–1116.) "When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary." (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700; *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own:  if they are not raised or supported by argument or citation to authority, we consider the issues waived."].)

These rules of appellate procedure apply with equal force to those who represent themselves. Self-represented litigants are not entitled to special treatment. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 523.) "A self-represented party is to be treated like any other party and is entitled to the same, but no greater, consideration than other litigants having attorneys." (*Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574 (*Elena S.*), citing *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.) "A doctrine generally requiring or permitting exceptional treatment of parties who represent

7.

themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 985.)

## II. Standard of Review

"The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.) We must uphold a trial court's custody order if correct "on any basis, regardless of whether such basis was actually invoked." (*Ibid*.) "The trial court is always bound to make a custody decision based upon the child's best interest." (*Ragghanti v. Reyes* (2004) 123 Cal.App.4th 989, 996.) In making an initial permanent custody determination, the court must look to all the circumstances bearing on the child's best interest. (*Burgess*, at pp. 31–32.) Among other factors, the court must consider the child's health, safety, and welfare. (Fam. Code, § 3011, subd. (a)(1).)

"Generally, 'the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered. [Citations.]' [Citation.] To the extent that a trial court's exercise of discretion is based on the facts of the case, it will be upheld 'as long as its determination is within the range of the evidence presented.' " (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 197.)

Here, the record on appeal consists of only the clerk's transcript because none of the hearings were transcribed by a court reporter. Father did not request a statement of decision or submit an approved or settled statement. "A proper record includes a reporter's transcript or a settled statement of any hearing leading to the order being challenged on appeal." (*Elena S.*, *supra*, 247 Cal.App.4th at p. 574.) Because the record is limited to the clerk's transcript, we treat this as an appeal " 'on the judgment roll,' to which the following rules apply: ' "Error must be affirmatively shown by the record and will not be presumed on appeal [citation]; the validity of the judgment [or order] on its face may be determined by looking only to the matters constituting part of the judgment

8.

roll [citation]; where no error appears on the face of a judgment roll record, all intendments and presumptions must be in support of the judgment [citation] [citation] … and any condition of facts consistent with the validity of the judgment will be presumed to have existed rather than one which would defeat it .…" ' " (*Id*. at pp. 574–575.)  In a judgment roll appeal, "we ' "must conclusively presume that the evidence is ample to sustain the [trial court's] findings." ' [Citation.]  Our review is limited to determining whether any error 'appears on the face of the record.' " (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324–325.)

### III.    Analysis

Father, who is self-represented, filed an opening brief with little to no legal analysis and no legal citations in support of his arguments.  His brief's headings do not clearly identify the issues he is raising on appeal.  He also frequently cites the incorrect page number of the clerk's transcript.  (See rule 8.204(a)(1)(C) [requiring "any reference to a matter in the record" to be supported by a citation to its location].)[5]

The deficiencies in father's brief make his arguments difficult to discern. Reaching the merits, as best we are able, father challenges the trial court's order as "biased" because the erroneous order regarding a tier 2 mediation irreparably tainted the proceedings, mother purportedly lied to cover up B.S.'s criminal past, and the court failed to directly address mother about father's allegations of her past conduct.  Father requests the order be modified as follows:  (1) visitation with father on the second weekend of every other month; (2) 96 hours of visitation with father for the "American New Year[]"

---

[5]    Notably, this was father's second attempt at submitting an opening brief.  His original opening brief filed on August 27, 2025, was ordered stricken because father used an improper form and failed to comply with the California Rules of Court.  Our order striking the first brief cited and discussed many of the same rules father failed to comply with in his subsequently filed brief.

9.

or no New Year visitation ordered for either parent; and (3) if mother continues her relationship with B.S., she must not do so during her periods of parenting time.

## A. The Tier 2 Order

A significant portion of father's brief discusses the erroneous order for a tier 2 mediation, his efforts to have a tier 3 mediation set in accordance with the trial court's intended order, and the response by FCS. Father contends the issues correcting this order "should never be associated with any [c]ourt [h]ouse." He claims FCS stated there was an error on the minute order but there were no errors on the minute order, "that was a coverup for someone or group trying to not let the [t]ier 3 [m]ediation happen." Father alleges FCS refused to follow the minute order and waited until just before the tier 3 mediation appointment to provide him with the intake forms. He argues there should be no tier 2 session showing in the court system for this matter and the erroneous order should have been immediately removed. Father acknowledges the court apologized for the error upon reviewing the email exchange between him and FCS but claims FCS staff should be terminated for "stating lies" and refusing to follow a court order.

"Mediation of custody issues is mandatory." (*In re Marriage of Slayton & Biggums-Slayton* (2001) 86 Cal.App.4th 653, 659; Fam. Code, § 3170, subd. (a).) "Mediation is provided early in the proceeding to help the parents to reach their own resolution of such disputes. When mediation is unsuccessful in resolving the custody or visitation dispute, the statutory requirement has been met and a resubmittal to mediation need not be ordered at the request of a party upon trial of that dispute. The trial judge possesses considerable discretion to determine whether the facts and circumstances of a case justify a further use of this precious and overtaxed resource." (*In re Marriage of Green* (1989) 213 Cal.App.3d 14, 25.)

Here, the trial court referred the parties for a tier 1 mediation that was unsuccessful. Having satisfied the statutory mediation requirement, the court had no obligation to resubmit the parties to further mediation. The minute order of January 3,

10.

2025, shows the court exercised its discretion to refer the parties to a tier 3 mediation, but the order issued on January 6, 2025, erroneously stated the referral was for a tier 2 mediation. FCS staff reasonably followed the order it received and scheduled the matter for a tier 2 session. Father alerted FCS to the discrepancy with the court's order and FCS obtained clarification from the court that the matter should be set for a tier 3 mediation. The scheduled mediation appointment was then converted to a tier 3 session to accord with the court's intended order. The parties proceeded with a tier 3 mediation with FCS, after which the mediator produced a report with recommendations pursuant to the local court rules.

The tier 2 order constitutes a mere clerical error. "A clerical error in the judgment includes inadvertent errors made by the court 'which cannot reasonably be attributed to the exercise of judicial consideration or discretion.' " (*Conservatorship of Tobias* (1989) 208 Cal.App.3d 1031, 1034.) In contrast, a "judicial error is the deliberate result of judicial reasoning and determination." (*Id*. at p. 1035.) " 'The term "clerical error" covers all errors, mistakes, or omissions which are not the result of the exercise of the judicial function.…' The signing of a judgment, which does not express the actual judicial intention of the court, is clerical rather than judicial error." (*Ibid*.) The record reflects the trial court conceded the tier 2 order was issued in error and noted the error derived from the courtroom, not FCS.

A judgment should not be reversed "for what so clearly appears to be a mere clerical error." (*Stone v. San Francisco Brick Co.* (1910) 13 Cal.App. 203, 206.) "Furthermore, error alone does not warrant reversal. 'It is a fundamental principle of appellate jurisprudence in this state that a judgment will not be reversed unless it can be shown that a trial court error in the case affected the result.' [Citation.] ' "The burden is on the appellant, not alone to show error, but to show injury from the error." ' [Citation.] 'Injury is not presumed from error, but injury must appear affirmatively upon the court's examination of the entire record.' [Citation.] 'Only when an error has resulted in a

11.

miscarriage of justice will it be deemed to be prejudicial so as to require reversal.' " (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822–823; see also Cal. Const., art. VI, § 13 ["[n]o judgment shall be set aside … for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)

As the appellant, father " 'bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice.' " (*In re Marriage of Dellaria & Blickman-Dellaria* (2009) 172 Cal.App.4th 196, 205.) But father fails to explain why a clerical error during the proceedings warrants reversal of the custody order. His assertions FCS staff refused to comply with the court's order for a tier 3 mediation or made falsehoods are not supported by the record. The parties participated in a tier 3 mediation, not a tier 2 mediation, with FCS after the tier 2 order was confirmed to be erroneous. An inadvertently issued order that did not meaningfully affect the proceedings does not constitute a miscarriage of justice.

Father's claims Fresno County's court system cannot be trusted in its entirety and the erroneous order was part of a coverup are meritless and unsubstantiated. The law recognizes a court may make clerical errors by providing mechanisms for the court to rectify such errors. (E.g., Code Civ. Proc., § 473 [a court may correct clerical errors upon an injured party's or the court's own motion].) Infallibility is therefore not expected from our courts. Honest mistakes may occur in a system subject to human error. That is all that occurred here.

### B. Father's Allegations Regarding Mother

Father claims mother misrepresented B.S.'s conviction as only a misdemeanor rather than a felony during the mediations with FCS. He attached to his brief a purported background check on B.S. indicating the offense was a felony.

12.

Father improperly relies on matters not contained in or supported by the record. Though father reportedly provided B.S.'s background check to the mediator, he fails to cite any part of the record showing he also filed it with the trial court, and it is not part of the record on appeal. We are confined to considering only what was presented by the parties to the court and cannot consider additional information presented to us for the first time on appeal. (*Kendall v. Barker* (1988) 197 Cal.App.3d 619, 625.) Because this purported background check was not presented to the court, we disregard it. (*AREI II Cases* (2013) 216 Cal.App.4th 1004, 1021 [appellate review is limited to the record before the trial court at the time it made the challenged ruling].) Regarding the accusation mother lied during mediation, the tier 1 mediation was confidential, and the mediator only reported whether the parties reached an agreement. The record consequently does not reflect what was said by either party during that mediation.

Father's argument also suffers from a one-sided recitation of the facts regarding B.S.'s convictions. "Where a party presents only facts and inferences favorable to his or her position, 'the contention that the findings are not supported by substantial evidence may be deemed waived.' " (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738; *Nwosu v. Uba*, *supra*, 122 Cal.App.4th at p. 1246 [an appellant must set forth in their brief all the material evidence].) Father's accusation mother misrepresented B.S.'s past to the mediator during the tier 3 mediation is not substantiated when the record is considered in its entirety. The mediator's report states mother told the mediator B.S. was convicted of a misdemeanor and provided supporting documentation indicating as much. Mother also gave details about the conviction the mediator found credible as the narrative included "violent and inappropriate" actions by B.S. The mediator was unable to determine if the offense was a felony or misdemeanor but concluded B.S. did not pose a threat to L.B. following her investigation. Both parties subsequently filed documentation with the court indicating B.S.'s offenses *were* misdemeanors in Washington state. Father submitted a case summary from Yakima County showing the charge against B.S. was

filed as burglary in the first degree, but the offenses were ultimately adjudicated as assault in the fourth degree (Wash. Rev. Code Ann., § 9A.36.041) and malicious mischief in the third degree (Wash. Rev. Code Ann., § 9A.48.090). The 2024 order from Yakima County vacating the convictions submitted by mother states B.S. sought to vacate his "misdemeanor or gross misdemeanor conviction(s)"[6] and likewise lists the offenses as "assault [four]" and "malicious mischief [three]-[domestic violence]." (Capitalization omitted.) Both offenses were gross misdemeanors, not felonies, under Washington law.[7] Consequently, father fails to show mother misrepresented B.S.'s criminal past.

Though unclear in his brief, father's request mother be precluded from a relationship with B.S. during her parenting time appears related to his reported concerns B.S. poses a risk to L.B. because of this criminal past. Father repeatedly raised concerns about B.S. before the trial court. Because the court did not preclude B.S.'s presence during mother's periods of custody, we presume the court found B.S. does not pose a risk to L.B. (See *In re Marriage of Sahafzadeh-Taeb & Taeb* (2019) 39 Cal.App.5th 124, 145 ["[G]iven no findings to the contrary, [an appellate court] must presume in favor of the trial court's order ' "every finding of fact necessary to support it." ' "].) We also may conclusively presume the evidence was ample to sustain that implied finding. (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154.) The court was aware of B.S.'s criminal history based on the documentation provided by both parties as detailed above. The court also had the mediator's report and was entitled to weigh that report with all other evidence. (*In re Marriage of Slayton & Biggums-Slayton*, *supra*, 86 Cal.App.4th at p. 659.) The mediator concluded father's concerns about B.S. were unsupported because B.S.'s

---

[6]    Washington divides crimes into misdemeanors, gross misdemeanors, and felonies. (Wash. Rev. Code Ann., § 9A.04.040.)

[7]    Though the relevant Washington statutes have changed since B.S.'s convictions in 2002, the offenses remain gross misdemeanors except assault in the fourth degree when committed under certain circumstances and during a specified timeframe after 2002. (See Wash. Rev. Code Ann., § 9A.36.041(3)(a).)

convictions were more than 20 years ago, there were no subsequent incidents of violence, and L.B. reported being comfortable with B.S. in mother's home. While we appreciate father's concern for L.B.'s safety, the court reasonably declined to conclude, as father would seemingly have it find, B.S.'s character is indelibly defined by conduct more than two decades ago that has not recurred since.

Father faults the trial court for failing to "directly address" mother in open court about father's allegations and documentation regarding mother's "character and who she really is as a person and a parent." Father says nothing about the documentation mother submitted showing inappropriate conduct by father in the parents' communications with each other and during exchanges of L.B., nor does he discuss the mediator's report of father's aggressive behavior. Though the record reflects improper behavior by both parents, including in L.B.'s presence, father only takes issue with the court's lack of questioning of mother.

Father misapprehends the trial court's role in determining custody. While the court must consider the past conduct of the parents in fashioning a custody order, "the superior court's function in determining custody is not to reward or punish the parents for their past conduct, but to determine what is in the best interests of the children." (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1094.) In making this determination, judges must "perform judicial duties without bias or prejudice." (Cal. Code Jud. Ethics, canon 3B(5).) Civil litigants have the same due process rights to an impartial tribunal as criminal defendants. (*Marshall v. Jerrico, Inc.* (1980) 446 U.S. 238, 242.) The court is therefore expected to act as an impartial adjudicator, not an advocate for either party. Father cites no legal authority the court was obligated to interrogate either parent before rendering its ruling. Nor does father explain how the court's examination of only one parent about their past conduct would be consistent with its objective role of determining custody without showing favor to either parent. The "actions of a judge

15.

must not only be impartial, but they must be seen as impartial by a reasonable person." (*In re Marriage of Tharpe* (2010) 188 Cal.App.4th 1295, 1326.)

To the extent father is claiming the trial court failed to consider his allegations and documentation about mother, father has not established on the record before us that the court did not consider what the parties presented for its consideration. Because "all intendments and presumptions are indulged in favor of [the order's] correctness," (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133), absent an affirmative showing in the record, we presume the court considered all documentation submitted by the parties in reaching its ruling. (See *Walling v. Kimball* (1941) 17 Cal.2d 364, 373 [appellate court never presumes an error was committed]; *Elena S.*, *supra*, 247 Cal.App.4th at p. 575 [trial judges presumed to have performed their official duties]; Evid. Code, § 664.) There is no affirmative showing the court did not review and consider the parties' submissions. We therefore presume the court considered all the evidence submitted by both parents in determining custody and visitation based on all the circumstances bearing on L.B.'s best interest.

Notably, father did not argue below and does not claim on appeal primary custody of L.B. should be with him rather than mother. It is therefore unclear in what manner father believes mother's purported misrepresentation of B.S.'s convictions and the trial court's consideration, or alleged lack of consideration, of the record resulted in error, let alone reversible error. (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 766 ["It is the appellant's burden to demonstrate the existence of reversible error."].)

Father asked the trial court to order visitation with him for the second weekend of the month and disagreed with mother having visitation for 96 hours during "Vietnamese Tet/Lunar New Year."[8] Father reiterates this same request to this court with no

---

[8] There are indications this holiday holds cultural significance for mother because she used a Vietnamese interpreter during the proceedings and reported that English is not her first language.

16.

explanation for how the court abused its discretion in ordering visitation with mother during these periods.  Rather than showing reversible error, father merely attempts to relitigate the case on appeal.  The order of the court is presumed to be correct on appeal, and father has not demonstrated otherwise.

## DISPOSITION

The trial court's order issued on April 9, 2025, is affirmed.